USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/18/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DMITRIY KHMALADZE, and IT ADAPTER
CORPORATION, INC.,

                        Plaintiff,

      -against-

MIKHAIL VOROTYNTSEV, AUM CODE, LLC,
IT ADAPTER, LLC, and SHOPLINK, INC.,

                       Defendants.
-----------------------------------------------------------------X

1:16-cv-8029-GHW

MEMORANDUM ORDER
AND OPINION

## I.    INTRODUCTION

Gary Tatintsian filed a complaint in a related case against Defendant Mikhail Vorotyntsev and his wife for allegedly misappropriating hundreds of thousands of dollars from Defendant ShopLink Inc. ("ShopLink") to fund their "lavish lifestyle." *See Tatintsian v. Vorotyntsev*, 16-cv-7203-GHW. Plaintiffs Dmitriy Khmaladze and IT Adapter Corporation, Inc. filed this lawsuit against Mikhail Vorotyntsev, AUM Code LLC, IT Adapter LLC, and ShopLink claiming that Vorotyntsev defrauded Plaintiffs in much the same way. *See* Complaint (ECF No. 1) ("Compl.") ¶¶ 1-5.

After Plaintiffs filed suit, ShopLink answered the complaint and asserted ten counterclaims against Plaintiffs arising out of Plaintiffs' alleged plan to usurp ShopLink's business model and employees. Vorotyntsev, AUM Code, LLC, and IT Adapter, LLC, also answered and asserted counterclaims against Plaintiffs. For the reasons that follow, Plaintiffs' motion to dismiss ShopLink's counterclaims is DENIED, Plaintiffs' motion to dismiss AUM Code LLC and IT Adapter, LLC's counterclaims is DENIED, and Plaintiffs' motion to dismiss Vorotyntsev's counterclaim is GRANTED.

## II. BACKGROUND[1]

Mikhail Vorotyntsev founded ShopLink in 2012 to develop software to sell and market goods on social media. Vorotyntsev's Amended Answer and Counterclaims (ECF No. 38) ("Vorotyntsev CC") ¶ 7. In January 2013, Vorotyntsev was introduced to Dimitriy Khmaladze, an experienced software architect and computer programmer with "special expertise in system frameworks." *Id.* ¶¶ 17, 18. Vorotyntsev told Khmaladze about his ideas for ShopLink, and by February 2013, Khmaladze began working for ShopLink as its Chief Technology Officer. *Id.* ¶¶ 20, 21. Later, Vorotyntsev formed AUM Code LLC ("AUM Code") with Khmaladze to develop source code and ShopLink's "back-end architecture." *Id.* ¶ 22. AUM Code has two members—Vorotyntsev, who owns 60 percent of the company, and IT Adapter Corporation Inc. (of which Khmaladze is the sole shareholder), which owns 40 percent. *Id.* ¶ 23. AUM Code, in turn, has a wholly owned subsidiary, IT Adapter LLC, which oversees certain operations for AUM Code and ShopLink. *Id.* ¶ 24. Khmaladze "became a manager of AUM Code" and served as the company's Chief Technology Officer. *Id.* ¶ 27. "Over the course of their working relationship, Vorotyntsev and ShopLink relied on Khmaladze's superior knowledge and expertise and entrusted him with confidential and proprietary information concerning his business plan for ShopLink and its affiliates." *Id.* ¶ 29.

In 2014, Vorotyntsev hired Younis Zubchevich, an investment banker and businessman, as a business advisor to ShopLink. *Id.* ¶ 43. In June 2015, Vorotyntsev told his old friend Gary Tatintsian about ShopLink, and in September 2015, Tatintsian expressed an interest in investing in ShopLink. *Id.* ¶ 45. Ultimately, in April 2016, Tatintsian invested in ShopLink. *Id.* ¶ 46. ShopLink

---

[1] Unless otherwise noted, the facts are taken from ShopLink, AUM Code, or Vorotyntsev's Amended Counterclaims, as applicable, and are accepted as true for the purposes of this motion. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

alleges that Tatintsian ultimately "devised a scheme to use his resources to punish Vorotyntsev, take ShopLink's business plan and usurp its technology" because Vorotyntsev declined to accept additional investments from Tatintsian's associates. *See id.* ¶¶ 50-57. In furtherance of this scheme, Tatintsian allegedly induced Zubchevich and Khmaladze to leave ShopLink and help Tatintsian develop a competing business. *Id.* ¶¶ 60, 61.

In the months following Tatintsian's investment in the company, Tatintsian allegedly received copies of ShopLink's bank statements on the condition that he keep them confidential; Tatintsian nonetheless shared them with Khmaladze and Zubchevich. *Id.* ¶ 65. Zubchevich contacted ShopLink investors, telling them that ShopLink was a scam and that Vorotyntsev had lied about ShopLink's ownership of the underlying technology. *Id.* ¶ 67. Tatintsian and Zubchevich tried to induce Khmaladze to "sever his ties with Vorotyntsev and ShopLink." *Id.* ¶ 66.

Khmaladze did in fact resign on September 11, 2016. *Id.* ¶ 72. The same day, Khmaladze terminated Vorotyntsev's access to ShopLink and AUM Code's proprietary source code. *Id.* The next day, Khmaladze "disavowed his association with AUM Code and IT Adapter," and rescinded Vorotyntsev's access to his IT Adapter email account. *Id.* ¶ 74. Khmaladze also refused to release funds to pay software engineers and other expenses necessary to complete the development of ShopLink and AUM Code's technology. *Id.* ¶ 73. To date, Khmaladze has refused to provide Vorotyntsev access to the "Assembla code repository" where ShopLink's source code is stored. *Id.* ¶ 76.

### III. PROCEDURAL HISTORY

On January 27, 2017 ShopLink filed an Amended Answer and Counterclaims against Plaintiffs. ShopLink's Amended Answer and Counterclaims (ECF No. 36) ("ShopLink CC"). ShopLink's counterclaims assert claims against Plaintiffs for (1) breach of contract, including the implied covenant of good faith and fair dealing; (2) breach of fiduciary duty; (3) unfair competition

3

perpetrated by civil conspiracy; (4) conversion perpetrated by civil conspiracy; (5) promissory estoppel; (6) unjust enrichment; (7) tortious interference with prospective business relations with investors perpetrated by civil conspiracy; (8) declaratory judgment regarding a Confidentiality, Non-Disclosure and Non-Circumvention Agreement (the "NDA") entered into by Khmaladze; (9) breach of the NDA; and (10) declaratory judgment regarding ShopLink's rights to certain software under the Copyright Act. *See id.*

On the same day, AUM Code LLC Inc. and IT Adapter LLC (together, the "AUM Code Defendants") also filed an Amended Answer and Counterclaims against Plaintiffs. The AUM Code Defendants' Amended Answer and Counterclaims (ECF No. 37) ("AUM Code CC"). Those Defendants assert counterclaims against Plaintiffs for (1) breach of contract, including the implied covenant of good faith and fair dealing; (2) breach of fiduciary duty; (3) conversion; (4) promissory estoppel; (5) declaratory judgment regarding AUM Code's rights to certain code and software under the Copyright Act; and (6) breach of contract for violation of the Non-Compete and Confidentiality provisions of the Asset Purchase Agreement between AUM Code LLC, IT Adapter Corporation, and Khmaladze (the "APA"). *See id.*

Finally, on February 3, 2017 Vorotyntsev filed an Amended Answer and Counterclaim against Plaintiffs asserting one claim against Plaintiffs for breach of their fiduciary duties. *See* Vorotyntsev CC.

Plaintiffs moved to dismiss certain of the counterclaims. Specifically, Plaintiffs moved to dismiss (1) ShopLink's counterclaims for promissory estoppel, unjust enrichment, and tortious interference with prospective business relations; (2) AUM Code's counterclaims for promissory estoppel and breach of contract; and (3) Vorotyntsev's claim for breach of fiduciary duty. *See* Plaintiffs' Motion to Dismiss (ECF No. 48) ("Mot. to Dismiss"). Counterclaim Plaintiffs jointly opposed Plaintiffs' motion to dismiss. *See* Opposition to Plaintiffs' Motion to Dismiss (ECF No.

4

53) ("Opp'n"). Plaintiffs filed a reply in further support of their motion to dismiss. *See* Plaintiffs' Reply (ECF No. 56) ("Reply").

## IV. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." A complaint must therefore contain more than "naked assertion[s] devoid of further factual enhancement." Pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678-79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further

5

factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

In deciding this motion to dismiss, the Court may consider documents that were either incorporated by reference into the counterclaims or integral to the claims asserted therein. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). For a document to be integral to a complaint, "the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] documents in framing the complaint.'" *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Chambers*, 282 F.3d at 153). While the Court must accept the facts as alleged in the complaint, "when any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint as true." *Rozsa v. May Davis Group, Inc.*, 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002).

Here, the Court considered the APA because it is integral to the AUM Code Defendants' Counterclaims. The AUM Code Defendants clearly had "actual notice" of the APA and relied on it in framing their complaint because their breach of contract claim arises out of Plaintiffs' alleged violation of certain covenants in the APA; indeed, the counterclaims quote extensively from, and characterize the parties' obligations under, the APA. *See* AUM Code CC ¶¶ 162-69.

V. **DISCUSSION**

    a. *Promissory Estoppel and Unjust Enrichment (ShopLink – Counts Five and Six; AUM Code Count Four)*

Plaintiffs' motion to dismiss the AUM Code Defendants' and ShopLink's claims for promissory estoppel and unjust enrichment as duplicative is denied because parties may plead both breach of contract and quasi-contract theories in the alternative when the defendant does not concede the enforceability of such contract. "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for

6

events arising out of the same subject matter." *Dart Brokerage Corp. v. Am. Commerce Ins. Co.*, No. 13 CIV. 04015 LGS, 2013 WL 5966901, at *2 (S.D.N.Y. Nov. 7, 2013) (quotation marks and alteration omitted) (quoting *Clark–Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987)). Nonetheless, "it is also well-established that plaintiffs who allege the existence of a valid contract may nonetheless plead the alternative theories of promissory estoppel and breach of contract when the defendant does not concede the enforceability of such contract." *Personal Watercraft Prod. SARL v. Robinson*, No. 16-CV-9771 (AJN), 2017 WL 4329790, at *11 (S.D.N.Y. Sept. 1, 2017) (internal citations, quotation marks, and alterations omitted) (collecting cases).

Here, both ShopLink's and the AUM Code Defendants' counterclaims contain claims for breach of contract and promissory estoppel. *see* ShopLink CC ¶¶ 151-57, 182-85; AUM Code CC ¶¶ 119-27, 142-151, 162-69. ShopLink's counterclaims also contain a claim for unjust enrichment. ShopLink CC ¶¶ 158-64. Plaintiffs assert that the equitable, non-contractual claims should be dismissed as duplicative. *See* Mot. to Dismiss at 17-18. However, Plaintiffs do not concede the enforceability of the relevant contract. *Compare e.g.*, Compl. ¶ 88 ("Plaintiffs are not bound by the Asset Purchase Agreement.") *with e.g.*, ShopLink CC ¶ 123 ("Khmaladze breached this contract. . . .") *and* AUM Code CC ¶ 122 ("Khmaladze, including through IT Adapter Corp., breached this contract. . . ."). In light of Plaintiffs' position that the contract is unenforceable, the Corporate Defendants may plead alternative claims for the equitable, non-contractual remedies of promissory estoppel and unjust enrichment. *See Personal Watercraft*, 2017 WL 4329790, at *11; *Piven v. Harwood Feffer LLP*, No. 14 CIV. 6601 LAK, 2015 WL 1267423, at *1 (S.D.N.Y. Mar. 11, 2015) (concluding that there was no "fatal inconsistency between the breach of contract and promissory estoppel claims" where defendants contended that no contract was ever formed); *Dart*, 2013 WL 5966901, at *2 ("[A] party is not precluded from proceeding on both breach of contract and quasi-contract

theories where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue." (citation omitted)).

      *b. Tortious Interference with Prospective Business Relations (ShopLink – Count Seven)*

ShopLink's counterclaim for tortious interference with prospective business relations is adequately pleaded. To state a claim for tortious interference with prospective business relations, a plaintiff must allege that: "(1) there was a business relationship with a third party; (2) defendant knew of that relationship and intentionally interfered with it; (3) defendant either acted solely out of malice or used wrongful means; and (4) defendant's interference caused injury to the relationship with the third party." *Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427, 434 (S.D.N.Y. 2007) (citing *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003)). "'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone . . . ." *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1980) (citation omitted). In order to show wrongful means

> [T]he plaintiff must show that defendant's conduct was not "lawful" but "more culpable." The implication is that, as a general rule, the defendant's conduct must amount to a crime or an independent tort. Conduct that is not criminal or tortious will generally be "lawful" and thus insufficiently "culpable" to create liability for interference with prospective contracts or other nonbinding economic relations.

*Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004). "[C]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*, 214 F. Supp. 3d 179, 187 (E.D.N.Y. 2016) (internal quotation marks omitted) (citing *Carvel Corp.*, 3 N.Y.3d at 190).

ShopLink's counterclaims plead the elements of this claim. ShopLink's pleading identifies the fact that it has business relations with several investors, who invested in ShopLink. ShopLink CC ¶ 166. The pleading identifies the alleged wrongful means utilized by Khmaladze and his co-

8

conspirators, Tatintsian and Zubchevich, to interfere with the company's relationship with those investors. They harassed certain of the investors. *Id.* ¶ 167. And they falsely told them that ShopLink is a fraud. *Id.* ¶ 168. That wrongful conduct, ShopLink alleges, resulted a deterioration of the company's relationship with those investors, and limited the company's ability to raise additional funds. *Id.* ¶ 170. Plaintiffs argue that ShopLink's claim should fail because it chose not to identify a specific investor—but the investors at issue are sufficiently identified for purposes of notice pleading; and, indeed, ShopLink has offered to provide the name of the investor referenced anonymously in the complaint. As a result, Plaintiffs' motion to dismiss this claim is denied.

    c. *Breach of Contractual Non-Compete Agreement and Confidentiality Provision (AUM Code Defendants – Count Six)*

AUM Code has adequately stated a claim for breach of contract. "'To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 535 (S.D.N.Y. 2017) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). "A claimant's failure to plead the performance of its own contractual obligations is fatal to a breach of contract claim even if the other requisite elements are properly pleaded." *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 451 (S.D.N.Y. 2014) (citations omitted).

Here, the parties only dispute whether AUM Code adequately performed under the APA. *See* Mot. to Dismiss at 19-21. AUM Code alleges that it performed its obligations. AUM Code CC ¶ 167. This allegation is nothing more than a threadbare recital of one of the elements of a cause of action for breach of contract, and as a result, it would not carry the day on its own. *DeJesus*, 726 F.3d at 87-88. But AUM Code also specifically explains how it did so: AUM Code "performed its

9

obligations under the Asset Purchase Agreement as Khmaladze (through ITAdapter Corp.) is now the owner of 40% of Aum Code." AUM Code CC ¶ 121.

Plaintiffs assert that AUM Code cannot have performed its obligations under the contract because no closing occurred under the agreement. Mot. to Dismiss at 20-21. Under the terms of the APA, AUM Code agreed to "deliver and cause to be delivered to [Khmaladze] (or a designee of [Khmaladze]) . . . The Purchase Price otherwise the 40% membership interest in Buyer, as provided in Section 2.3" of the APA. Ex. B to Compl. § 8.3. Section 2.3, in turn, provides that

> The purchase price for the Assets is a number of Class A Units of [AUM Code] equal to 40% of the outstanding membership units of [AUM Code] on the Closing Date (the "Seller Units") plus the Assumed Liabilities. . . . The Seller Units shall be issued to the Seller at the Closing on the Closing Date. . . .

*Id.* § 2.3.

The APA established a procedure in which consideration was to be delivered at a closing. AUM Code admits that "no formal event akin to a 'closing' has yet occurred." AUM Code's Amended Answer (ECF No. 37) ¶ 57. Because no closing occurred consistent with the terms of the APA, Plaintiffs argue that AUM Code has not performed its obligations and Plaintiffs are excused from performing any obligations under the agreement as a matter of law.

This is a dispute that cannot be resolved in a motion to dismiss. AUM Code alleges that 40% of its shares were transferred to Khmaladze or his representative. *See, e.g.*, AUM Code CC ¶¶ 8, 46, 121. The Court must accept that fact as true for purposes of this motion. *Burch,* 551 F.3d at 124. Whether that is in fact true, and, moreover, whether AUM Code's failure to transfer those interests at a formal closing represented a material breach of the contract cannot be determined from the face of the pleadings. As a result, Plaintiffs' motion to dismiss this claim is denied.

d. *Breach of Fiduciary Duty (Vorotyntsev – Count One)*

Vorotyntsev has failed to state a claim for breach of fiduciary duty against either IT Adapter or Khmaladze. Vorotyntsev's claims for breach of fiduciary duty against IT Adapter fail because IT Adapter was only a minority member in AUM Code. Vorotyntsev owned 60% of AUM Code. He claims that IT Adapter, the owner of the remaining 40% interest in the company, owed fiduciary duties to him personally. "'[I]n the absence of provisions in the LLC agreement explicitly disclaiming the applicability of default principles of fiduciary duty,' controlling members in a manager-managed LLC owe minority members 'the traditional fiduciary duties' that controlling shareholders owe minority shareholders." *Kelly v. Blum*, No. CIV.A. 4516-VCP, 2010 WL 629850, at *12 (Del. Ch. Feb. 24, 2010) (internal citations omitted). However, "Delaware imposes no default fiduciary duties on non-managing, non-controlling members, as a matter of Delaware law." *Imbert v. LCM Interest Holding LLC*, 2013 WL 1934563, at *7 (Del. Ch. May 7, 2013). IT Adapter had less than a majority stake in the company. Vorotyntsev does not allege that IT Adapter was the manager of AUM Code; to the contrary, he asserts that Khmaladze held that role. Vorotyntsev CC ¶ 83. The counterclaims do not assert facts sufficient to allege that IT Adapter owed Vorotyntsev a fiduciary duty on any other basis. As a result, because IT Adapter was not a controlling member of AUM Code, it did not owe its fellow member, Vorotyntsev, a direct fiduciary duty.

Vorotyntsev's claim against Khmaladze fails because Vorotyntsev has failed to plausibly plead that Khmaladze was a manager of AUM Code. As a result, Vorotyntsev has not adequately pleaded that Khmaladze breached the fiduciary duties that a manager of a limited liability company owes to the company's members. As noted above, Vorotyntsev superficially pleads that Khmaladze was a "manager" of AUM Code. Vorotyntsev CC ¶ 83. He does so presumably because under Delaware law, "'in the absence of a contrary provision in the LLC agreement,' LLC managers . . . owe 'traditional fiduciary duties of loyalty and care' to each other and to the company." *Auriga*

11

*Capital Corp. v. Gatz Properties*, 40 A.3d 839, 849–51 (Del. Ch.), *judgment entered sub nom. Auriga Capital Corp. v. Gatz Properties, LLC* (Del. Ch. 2012), *aff'd*, 59 A.3d 1206 (Del. 2012). The parties agree that there was no written limited liability agreement for AUM Code that might exculpate a manager from these default duties. As a result, if Khmaladze was AUM Code's manager, he would owe fiduciary duties to the company's members, including Vorotyntsev.

Vorotyntsev's claim disregards the Delaware law that defines a "manager" as follows:

> Unless otherwise provided in a limited liability company agreement, the management of a limited liability company shall be vested in its members in proportion to the then current percentage or other interest of members in the profits of the limited liability company owned by all of the members, the decision of members owning more than 50 percent of the said percentage or other interest in the profits controlling; provided however, that if a limited liability company agreement provides for the management, in whole or in part, of a limited liability company by a manager, the management of the limited liability company, to the extent so provided, shall be vested in the manager who shall be chosen in the manner provided in the limited liability company agreement.

Del. Code Ann. tit. 6, § 18-402 (West). Vorotyntsev admits that AUM Code did not have a written limited liability company operating agreement. Vorotyntsev's Amended Answer (ECF No. 38) ¶ 36. As a result, by default, the company would be managed not by a manager, but, rather, by the company's members. According to the pleadings, Khmaladze was not designated as AUM Code's manager pursuant to a limited liability company agreement.[2] As a result, the counterclaims do not adequately plead that Khmaladze was a manager of the company, owing fiduciary duties to its members.

To oppose this conclusion, Vorotyntsev points to Chancellor Strine's opinion in *WaveDivision Holdings, LLC v. Millennium Digital Media Sys., L.L.C.*, No. C.A. 2993-VCS, 2010 WL

---

[2] Under Delaware law, a limited liability company agreement can be either written or oral, but oral agreements are subject to the statute of frauds. *See generally, Olson v. Halvorsen*, 986 A.2d 1150, 1160 (Del. 2009). Here, Vorotyntsev expressly concedes that there was no written agreement. Vorotyntsev never alleges that there existed an oral limited liability company pursuant to which Khmaladze was designated as a manager.

12

3706624 (Del. Ch. Sept. 17, 2010). Vorotyntsev argues that the case holds that one can become a "*de facto*" manager of a limited liability company. Vorotyntsev badly misreads the case. As part of his findings of fact in a case involving a contract dispute, Chancellor Strine described one player in the case as a "de facto" manager of a limited liability company. Significantly, Chancellor Strine described the "de facto" manager as having been granted that authority by the management committee that was charged with governance of the limited liability company.[3] The Court does not believe that *WaveDivision* can be read to stand for the proposition that a person can become a manager of a Delaware limited liability company—liable to its members as well as the company itself—by virtue of the nature of the responsibilities assumed by that person in the operation of the limited liability company, and without being named as a manager in the limited liability company agreement.

Furthermore, Vorotyntsev does not adequately allege that Khmaladze owes a direct fiduciary duty arising from a relationship of "trust and confidence" as a result of Khmaladze's work coordinating the development of software for ShopLink. "Under New York law, a fiduciary duty arises if 'confidence is reposed on one side and there is resulting superiority and influence on the other.'" *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 502-03 (S.D.N.Y. 2011) (citing *United States v. Chestman*, 947 F.2d 551, 568 (2d Cir.1991)); *see also Daly v. Metropolitan Life Ins. Co.*, 782 N.Y.S.2d 530, 535 (Sup. Ct. N.Y. Co. 1992) ("[A] fiduciary duty arises, even in a commercial transaction, where one party reposed trust and confidence in another who exercises discretionary functions for the party's benefit or possesses superior expertise on which the party relied."). Vorotyntsev alleges in a conclusory manner that he had a "special relationship of trust and confidence" with Khmaladze.

---

[3] *WaveDivision Holdings, LLC*, 2010 WL 3706624, at *3 ("Despite Millennium's claim that Westbrook was the manager in charge, I am convinced that at all relevant times Fredette was also acting as not only an agent of the Management Committee but also as a fiduciary of Millennium. In essence, he was empowered as a de facto manager of Millennium, and wielded great influence over other Millennium managers, including Westbrook, precisely because he was given that role by key members of the Management Committee.")

13

Vorotyntsev CC ¶ 84. This conclusory statement standing on its own does not adequately plead the existence of a fiduciary duty.

The facts regarding the parties' relationship as set forth in the pleadings do not adequately show that Khmaladze owed Vorotytnsev, personally, any fiduciary duties—if anything, those duties were owed to ShopLink, the company both men were working to develop. Vorotytnsev owned ShopLink, the company where Khmaladze worked as Chief Technology Officer. Vorotyntsev relied on Khmaladze's expertise with computer technology; he explained his business plan to his employee, Khmaladze. Vorotyntsev CC ¶ 84. These facts do not plead that Khmaladze owed a fiduciary duty to Vorotyntsev. Vorotyntsev is alleged to have been Khmaladze's superior—the majority owner of ShopLink, the company for which Khmaladze worked. While Khmaladze had specialized expertise upon which Vorotytnsev alleges he relied, these allegations on their own are inadequate to state a claim. *See Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770(SAS), 2003 WL 1858153, at *5 (S.D.N.Y. 2003) (holding allegations that defendant "was in a dominant position as it possessed knowledge and expertise" insufficient to survive motion to dismiss). Fundamentally, the fact that Khmaladze, the software engineer, knew more about computers than his boss does not make him a fiduciary with direct responsibilities to his boss or the company's shareholders. Because this claim is not plausibly pleaded, it is dismissed without prejudice.

## VI. Leave to Amend

Motions to amend are governed by Fed. R. Civ. P. 15, which provides that "leave to amend a pleading should be freely granted 'when justice so requires.'" *Agerbrink v. Model Service LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016). Under this standard, a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile. *Id.* Given this liberal standard,

14

Vorotyntsev is granted leave to amend his amended counterclaims to remedy the deficiencies identified in this opinion.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to dismiss Vorotyntsev's counterclaim (Count One) is GRANTED. Plaintiffs' motion to dismiss ShopLink's claims for promissory estoppel and unjust enrichment (Counts Five and Six) is DENIED and their motion to dismiss ShopLink's claim for tortious interference with prospective business relations (Count Seven) is DENIED. Finally, Plaintiffs' motion to dismiss the AUM Code Defendants' counterclaim for promissory estoppel (Count Four) is DENIED and their motion to dismiss the AUM Code Defendants' claim for breach of contract (Count Six) is DENIED.

The Clerk of Court is directed to close the motion pending at Dkt. No. 47.

SO ORDERED.

Dated: April 18, 2019
New York, New York

GREGORY H. WOODS
United States District Judge