UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

DMITRIY KHMALADZE and IT ADAPTER
CORPORATION INC.,

                                 Plaintiffs-Counterclaim
                                 Defendants,

                 - against –

MIKHAIL VOROTYNTSEV, AUM CODE LLC, IT
ADAPTER LLC, and SHOPLINK INC.,

                                 Defendants-
                                 Counterclaim Plaintiffs.

No. 1:16 Civ. 8029 (GHW)

------------------------------------------------------------------------x

**RULE 56.1 COUNTER-STATEMENT OF MATERIAL FACTS OF DEFENDANTS-COUNTERCLAIM PLAINTIFFS AND STATEMENT OF ADDITIONAL MATERIAL FACTS, IN OPPOSITION TO KHMALADZE MOTION FOR SUMMARY JUDGMENT**

       Pursuant to Fed. R. Civ. P. 56, Local Civil Rule 56.1(a), and Rule 3(E)(ii) of the

Court's Individual Rules of Practice in Civil Cases, Defendants-Counterclaim Plaintiffs,

AUM Code LLC, ITAdapter LLC, and Shoplink, Inc., ("Defendants"), through their

undersigned counsel, respectfully submit the following counter-statement of material

facts with statement of additional facts, showing that there are material, genuine issue to

be tried.

## <u>Entities</u>

    1.       Plaintiff-Counterclaim Defendant ITAdapter Corporation, Inc.

("ITAdapter") is an Ohio corporation formed by Dmitriy Khmaladze in March 2007. *See* Declaration of Partha P. Chattoraj in Support of Motion for Summary Judgment, dated Jan. 18, 2022 ("Chattoraj Decl.") Ex. 5. Khmaladze is the sole shareholder and Chief Executive Officer of ITAdapter Corporation, Inc. Chattoraj Decl. Ex. 7 (Asset Purchase Agreement) at 1, 28.

> **Admitted and by way of additional response, the Asset Purchase Agreement did not require that an operating agreement be finalized. Exhibit 2, page 69, lines 3-22.**

2.      Khmaladze registered the domain name "itadapter.com" in 2007, and has been the registered owner of that domain continuously since that time. Chattoraj Decl. Ex. 6.

> **COUNTER-STATEMENT: Paragraph 2 is irrelevant to the claims and defenses for this case. The domain belongs to Shoplink as it was bought in April of 2015, via its subsidiary Aum Code LLC. Affidavit in Opposition.**

3.      Defendant-Counterclaim Plaintiff ShopLink, Inc. is a Delaware corporation. Complaint, dated Oct. 13, 2016, ECF Doc. No. 1 ("Compl.") ¶ 11; Amended Answer of ShopLink, Inc., dated Jan. 27, 2017, ECF Doc. No. 36 ("ShopLink Answer") ¶ 11.

> **Admitted.**

4.      Defendant-Counterclaim Plaintiff Aum Code LLC is a Delaware limited

2

liability company.  Compl. ¶ 9; Amended Answer of Aum Code LLC and IT Adapter

LLC, dated Jan. 27, 2017, ECF Doc. No. 37 ("Aum Code Answer") ¶ 9.

> **Admitted.**

5.    Defendant-Counterclaim Plaintiff IT Adapter LLC is a Delaware limited

liability company.  Compl. ¶ 10; Amended Answer of Aum Code LLC and IT Adapter

LLC, dated Jan. 27, 2017, ECF Doc. No. 37 ("Aum Code Answer") ¶ 10.

> **Admitted.**

## The Asset Purchase Agreement

6.    Dmitriy Khmaladze signed the Asset Purchase Agreement personally on

April 18, 2015.  Dmitriy Khmaladze signed the Asset Purchase Agreement as Chief

Executive Officer of ITAdapter Corporation Inc. on April 18, 2015.  Chattoraj Decl. Ex.

7 at 28.

> **Admitted.**

7.    Mikhail Vorotyntsev signed the Asset Purchase Agreement as Chief

Executive Officer of Aum Code on April 22, 2015.  Chattoraj Decl. Ex. 7 at 28.

> **Admitted.**

8.    No formal event akin to a "closing" took place under the Asset Purchase

Agreement.  Compl. ¶ 57; ShopLink Answer ¶ 57; Aum Code Answer ¶ 57.

> **COUNTER-STATEMENT: Paragraph 8 is irrelevant to the claims**
>
> **and defenses for this case. No formal closing was required, as it was**
>
> **agreed that a closing would be done later, when Shoplink had secured**

**the proper legal advice on how to formalize the closing. Affidavit in Opposition.**

9. No operating agreement for Aum Code LLC was finalized.  Compl. ¶ 36; ShopLink Answer ¶ 36; Aum Code Answer ¶ 36.

**COUNTER-STATEMENT: Paragraph 9 is irrelevant to the claims and defenses for this case. An Operating Agreement was not immediately required, as it was agreed upon by all parties that it would be done once the attorneys were retained to prepare it. Affidavit in Opposition.**

10. No draft or final written operating agreement for Aum Code LLC was produced in discovery by any party.  Chattoraj Decl. ¶ 5.

**COUNTER-STATEMENT: Paragraph 10 is irrelevant to the claims and defenses for this case. There is a draft Operating Agreement, and it has been produced. It was produced by Ed Zahos, who was Shoplink's interim General Counsel. It was supposed to have been vetted by the outside legal counsel and it was understood that it was vetted, except for the formalities. Affidavit in Opposition.**

11. No formal membership books and records of Aum Code LLC were produced in discovery by any party.  Chattoraj Decl. ¶ 6.

**COUNTER-STATEMENT: No formal membership books and**

4

**records were ever required, until proper legal counsel was assigned to**

**the task. Affidavit in Opposition.**

12.      No draft or final written operating agreement for IT Adapter LLC was

produced in discovery by any party.  Chattoraj Decl. ¶ 7.

> **COUNTER-STATEMENT: Paragraph 12 is irrelevant to the claims**
>
> **and defenses for this case. No Operating Agreement was required as**
>
> **the company was fully operational, and Khmaladze had no problem**
>
> **withdrawing money directly from IT Adapter LLC into his personal**
>
> **account for over two years.**
>
> **Affidavit in Opposition.**

13.      On April 28, 2015, Mikhail Vorotyntsev wrote an email to Eric Hellige,

stating, "We think you may have missed a couple of necessary documents for closing."

Chattoraj Decl. Ex. 8.

> **Admitted and by way of further answer, Pryor Cashman failed at its**
>
> **job; hence, the Asset Purchase Agreement was finalized by Younis**
>
> **Zubchevich, and was understood to have been final, with the**
>
> **exception that when legal counsel was appointed, there was a vesting**
>
> **schedule for Khmaladze's membership interest that would have been**
>
> **part of the operating agreement.**
>
> **Affidavit in Opposition.**

14.      Eric Hellige is a lawyer who was handling ShopLink's affairs.  Chattoraj

Decl. Ex. 1 (Transcript of Deposition of Defendants, dated Nov. 18, 2020 (hereinafter

"Nov. Dep.")) at 55:15-25.

> **Admitted.**

15.　　Mr. Hellige responded to this email, and Khmaladze then responded, "And

the purchase price."  Chattoraj Decl. Ex. 8.

> **COUNTER-STATEMENT: It was known that the purchase price was**
>
> **40% membership interest in Aum Code LLC. Affidavit in Opposition.**

16.　　No documents have been produced by any party showing any response to

this April 28, 2015 email from Khmaladze to Hellige and Vorotyntsev regarding the

purchase price.  Chattoraj Decl. ¶ 9.

> **COUNTER-STATEMENT: It was known that the purchase price was**
>
> **40% interest in Aum Code LLC. Affidavit in Opposition.**

17.　　On September 5, 2015, Mikhail Vorotyntsev wrote an email to Edward

Zahos and Dmitriy Khmaladze entitled "Corporate Governance and commercial

operations."  Chattoraj Decl. Ex. 9.

> **COUNTER-STATEMENT: An email is a document, and, therefore,**
>
> **speaks for itself.**

18.　　Edward Zahos is a lawyer.  Chattoraj Decl. Ex. 2 (Transcript of

Deposition of Defendants, dated Dec. 16, 2020 (hereinafter "Dec. Dep.")) at 59:11-14.

> **Admitted.**

19.　　In that email, Vorotyntsev indicated that the AumCode LLC operating

agreement should be prepared.  Chattoraj Decl. Ex. 9.

> **Admitted, and by way of further response, that fact was always known and agreed upon by all parties. Further, an email is a document, and, therefore, speaks for itself.**

20.    In that email, Vorotyntsev also stated, "(Must finalize IT Adapter Corp Inc. asset purchase transaction and make sure of proper dissolution of ITA.)" *Id.*

> **Admitted, and by way of further response, as it was agreed that the transaction would be done in due course. Further, an email is a document, and, therefore, speaks for itself.**

21.    On December 3, 2015, Edward Zahos emailed a draft Addendum to Asset Purchase Agreement to Mikhail Vorotyntsev and Dmitriy Khmaladze.  Chattoraj Decl. Ex. 10; Vorotyntsev Dep. 57:20-60:9.

> **Admitted.**

22.    In that email, Zahos stated that he "drafted this Addendum based on input from Mikhail that I haven't corroborated with Dmitriy, so want to make sure this reflects both party's [*sic*] intent."  Chattoraj Decl. Ex. 10.

> **Admitted, and by way of further response , Khmaladze had agreed to the addendum, as shown in a Skype message from him, attesting to that. Further, an email is a document, and, therefore, speaks for itself. Affidavit in Opposition.**

23.    As set forth in the email and attachment, this draft Addendum was

intended to amend the "Definitions" and "Purchase Price" sections of the APA, "to create a 4-year vesting schedule for the 40% of Aum Code Class A Units due to Dmitriy under the APA." *Id.*

> **Admitted with further response, as stated in 13 and 22, above.**

24.    The draft Addendum contemplated that Dmitriy would not receive any of the 40% membership interest in Aum Code LLC until a Commercial Release Date, as defined in the draft Addendum, unless a change in control or ownership of Aum Code took place or until "the termination of Khmaladze's employment from Buyer or its affiliate without cause," in which circumstances the membership interest would be fully vested. *Id.*

> **COUNTER-STATEMENT: Paragraph 24 is an interpretation of evidence, an evidentiary conclusion, or a legal conclusion and is not a factual statement. Further, an email is a document, and, therefore, speaks for itself.**

25.    On December 4, 2015, Khmaladze sent an email to Zahos requesting a call. *Id.*

> **COUNTER-STATEMENT: An email is a document, and, therefore, speaks for itself.**

26.    Vorotyntsev agreed with the contents of the Addendum. Dec. Dep. at 60:7-61:16.

> **COUNTER-STATEMENT: Paragraph 27 is a misstatement of the**

**deposition transcript. The witness was stating that *Khmaladze* agreed**

**with the contents.**

27.     The Addendum states that the contemplated software product or software

as a service would incorporate "material elements of the Schedule 3.8 Intellectual

Property for general availability."  Chattoraj Decl. Ex. 10 at DK00353.

> **COUNTER-STATEMENT: The Addendum is a document and,**
>
> **therefore, speaks for itself.**

28.     The phrase "Schedule 3.8 Intellectual Property" in the Addendum refers to

Schedule 3.8 of the APA.  Chattoraj Decl. Exs. 7, 10.

> **COUNTER-STATEMENT: The Addendum is a document and,**
>
> **therefore, speaks for itself. Paragraph 28 is an interpretation of**
>
> **evidence.**

29.     No party has produced a signed copy of the Addendum in discovery in this

action.  Chattoraj Decl. ¶ 10.

> **COUNTER-STATEMENT: A copy of the signed addendum would**
>
> **have been in the email account that was blocked by Khmaladze.**
>
> **Khmaladze had a duty to produce it but destroyed those emails and**
>
> **attachments in the ITAdapter account. Affidavit in Opposition.**

30.     Vorotyntsev testified about this Addendum in his December 16, 2020

deposition, individually and as the 30(b)(6) witness for the entity Defendants.  Dec. Dep.

57:20-63:4; 70:20-74:14; 147:16-156:6.

**COUNTER-STATEMENT: Paragraph 30 is irrelevant to the claims and defenses for this case.**

31.      Vorotyntsev testified that Khmaladze had agreed to this Addendum.  *Id.* at 60:13-61:16; 72:14-73:20.

**COUNTER-STATEMENT: The transcript is a document and speaks for itself. Paragraph 31 is an interpretation of the document.**

32.      Vorotyntsev testified that this Addendum represented a "claw back" of Khmaladze's Aum Code equity interest.  *Id.* at 149:8-149:16.

**COUNTER-STATEMENT: The transcript is a document and speaks for itself. Paragraph 32 is an interpretation of the document.**

33.      In response to the question "Did Mr. Khmaladze's ownership interest in AUM Code LLC ever vest?" Vorotyntsev responded, "No." *Id.* at 148:14-16.

**Admitted.**

34.      Vorotyntsev ultimately declined to answer the question whether Khmaladze owns a 40% membership interest in Aum Code LLC, stating that he needed to consult counsel in order to answer the question.  *Id.* at 152:15-156:6.

**Admitted.**

35.      On March 11, 2020, Defendants submitted a Declaration of Mikhail Vorotyntsev in opposition to Plaintiffs' motion for default, stating that Vorotyntsev was the "sole member" of Aum Code LLC and IT Adapter LLC.  ECF Doc. No. 129.

**COUNTER-STATEMENT: Without a reference to time, paragraph**

**35 is irrelevant to the claims and defenses for this case. Khmaladze was agreed to be the owner of 40% and had he turned over the code with the commercial release for Books, which he launched with Tatintsian, he would have consummated his ownership. Affidavit in Opposition.**

### Khmaladze's Business Relationships

36.    No written employment agreement between ShopLink and Plaintiffs exists.  Nov. Dep. at 185:22-186:3; Dec. Dep. 83:3-9; Chattoraj Decl. ¶ 2.

> **COUNTER-STATEMENT: An employment agreement exists, in writing, and orally. Affidavit in Opposition.**

37.    No written employment agreement between Aum Code and Plaintiffs exists.  Dec. Dep. 161:12-162:12; Chattoraj Decl. ¶ 2.

> **COUNTER-STATEMENT: An employment agreement exists, in writing, and orally. Affidavit in Opposition.**

38.    No written employment agreement between IT Adapter LLC and Plaintiffs exists.  Dec. Dep. at 82:23-83:2, 160:24-161:5; Chattoraj Decl. ¶ 2.  No party has produced any documents indicating that either Plaintiff is a member of IT Adapter LLC. Chattoraj Decl. ¶ 6.

> **COUNTER-STATEMENT: Defendant, Mikhail Vorotyntsev, will be capable of producing the relevant documents when and if Khmaladze returns the ITADAPTER emails in full. Affidavit in Opposition.**

39.     No party has produced a copy of a written employment agreement between Plaintiffs and any of Defendants that was signed by Khmaladze.  Chattoraj Decl. ¶¶ 2-3.

> **COUNTER-STATEMENT: Khmaladze sent the signed version, but it was sent to Los Angeles, after Vorotyntsev moved back to New York in December 2015. The scanned copies were also emailed to Vorotyntsev's Itadapter email which was controlled by Khmaladze, who deleted these emails after he blocked Vorotyntsev's access to them. Affidavit in Opposition.**

40.     Khmaladze had an oral or implied contractual relationship with IT Adapter LLC.  Nov. Dep. at 184:19-23, 185:5-186:3; Chattoraj Decl. Ex. 3 (Transcript of Deposition of Plaintiffs, dated Nov. 20, 2020 ("Pl. Dep.")) at 321:1-16.

> **Admitted.**

41.     Defendants hired Khmaladze because he had superior knowledge and expertise in system frameworks for Internet servers.  (ShopLink Am. Countercl. ¶ 131; Aum Code Am. Countercl. ¶ 131.)

> **COUNTER-STATEMENT: Khmaladze represented that he had such knowledge and expertise, but there was never any manifestation or showing of knowledge and expertise. Defendants never saw that alleged expertise or knowledge in reality. Affidavit in Opposition.**

42.     Plaintiffs were paid from the IT Adapter LLC bank account in connection

with their software development work.  Nov. Dep. at 185:16-18;

>**COUNTER-STATEMENT: Khmaladze drew money directly, on his own.**
>
>**Affidavit in Opposition.**

43.     No payroll taxes or other employment deductions were withheld from the monies paid to Plaintiffs by IT Adapter LLC.  Dec. Dep. 64:5-13; Chattoraj Decl. ¶ 16.

>**COUNTER-STATEMENT: Khmaladze insisted on paying his own taxes until Shoplink had proper corporate legal counsel and accounting. Affidavit in Opposition.**

44.     Defendants did not pay any payroll tax, employer portion of 7.5% FICA taxes, local or state taxes in connection with compensation to Plaintiffs.  Dec. Dep. 64:5-13; Chattoraj Decl. ¶ 16.

>**COUNTER-STATEMENT: Khmaladze was aware that Shoplink was a pure startup operation and had been looking for proper legal and accounting representation. Affidavit in Opposition.**

45.     Defendants did not issue any Forms W-2 or Forms 1099 to Plaintiffs. Nov. Dep. at 186:4-25; Chattoraj Decl. ¶ 18.

>**COUNTER-STATEMENT:  Khmaladze was aware that Shoplink was a pure startup operation and had been looking for proper legal and accounting representation.  Affidavit in Opposition.**

46.     Plaintiffs accounted for their income as independent contractors, not

employees.  Pl. Dep. at 185:8-186:8, 321:2-16.

> **COUNTER-STATEMENT: Khmaladze insisted on having an independent contractor status for tax purposes, notwithstanding the fact that he was an employee. Notably, plaintiff's position at Agnicore as an "employee" was identical to his position at Shoplink, as far as having the same duties, same CTO title, and same ownership of shares. Exhibit 3, page 258, line 23 and page 259, line 2. Further, plaintiff does not know what he is taking about as he prides himself on being a "tech" guy and not a "business" guy; as an example, plaintiff's idea of being a contractor is when "there is no guarantee of anything". Exhibit 3, page 321, lines 2-11. Affidavit in Opposition.**

47.    No health insurance was provided by Defendants to Plaintiffs.  Dec. Dep. at 88:2-9; Chattoraj Decl. ¶ 17.

> **COUNTER-STATEMENT: Khmaladze insisted that he pay for his own health insurance, saying it would be cheaper at that stage. Notably, Agnicore, the company that hired plaintiff as an "employee" after he left Shoplink also did not pay for health insurance. Exhibit 3, page 258, lines 21-22. Affidavit in Opposition.**

48.    Khmaladze worked from his home in Hudson, Ohio, throughout his relationship with Defendants.  Pl. Dep. 209:22-210:21.

> **Admitted.**

49.    Khmaladze had substantial autonomy in the manner in which he provided software development services.  Defendants did not provide Khmaladze with any specific instructions as to how to provide those services.  Dec. Dep. 94:5-24, 109:21-24.

**COUNTER-STATEMENT: Autonomy is an inappropriate word choice for describing Khmaladze's control by others; he was the superior technology officer, so the idea that he was autonomous rather than directed, does not apply to his situation.  In fact, plaintiff had the same position, same job title, and same job duties at Agnicore as he did at Shoplink, where he was an employee, so the designation "autonomous" is contrived, self-serving and artificial. Affidavit in Opposition.**

50.    Defendants delegated to Plaintiffs all hiring and supervision of the software developers.  Dec. Dep. 86:5-15, 93:18-94:9.

**COUNTER-STATEMENT: On the contrary, Vorotyntsev had developers that he interacted with (Exhibit 2, page 124, line 17) and over the years had a number of developers. Exhibit 2, page 27, line 12.**

51.    No written license of software or of other intellectual property between ShopLink and Aum Code LLC was produced by any party in discovery.  Chattoraj Decl. ¶ 8.

**COUNTER-STATEMENT: A license exists. It was prepared first by Ed Zahos and then vetted and confirmed by the new corporate**

counsel.

52.    Khmaladze terminated his relationship with Defendants on September 11, 2016.  Chattoraj Decl. Ex. 11.

      **Admitted.**

53.    Khmaladze and Tatintsian began working together at a separate company, Agnicore, in approximately October 2016.  Pl. Dep. at 77:10-12.

      **Admitted.**

54.    Agnicore was initially focused on blockchain and a database product.  *Id.* at 77:14-80:5.

      **COUNTER-STATEMENT: Agnicore did not focus on blockchain and a database product. On the contrary, initially it was copying Shoplink and implementing its counterfeit Shoplink-ecommerce platform. Affidavit in Opposition.**

55.    Khmaladze testified that the Agnicore system involved "a different code base, different build, different framework, different…structure as far as its capabilities." *Id.* at 307:16-308:25.

      **COUNTER-STATEMENT: Agnicore did not have a different code base, etc. Agnicore stole Shoplink's code base, build, and framework; that is how it could be developed in a few weeks (because Khmaladze had been working on it for at least three years for Shoplink). Khmaladze took a Shoplink demo to Tatintsian, and Agnicore's**

16

**platform was identical. Significantly, at his deposition, Khmaladze**

**avoided the question and refused to discuss the details of the**

**technological differences. Exhibit 3, page 308, lines 15-25.**

**Affidavit in Opposition.**

56.    Agnicore ceased operations in 2018.  *Id.* at 72:5-15.

**COUNTER-STATEMENT: Because both plaintiffs never produced**

**Agnicore documentation or records in discovery, defendants cannot**

**determine the truth of this paragraph.**

57.    Agnicore never finalized a marketable product before it ceased operations.

*Id.* at 253:3-254:9.

**COUNTER-STATEMENT: Agnicore finalized a product and**

**launched its copycat Shoplink product, fully marketable and ready.**

**In fact, Agnicore had an alpha phase product with Readerlink**

**(Shoplink's client), which was also beta ready, technologically, and**

**only lacked further marketing. Exhibit 3, page 253, lines 7-22.**

58.    Agnicore never had any revenue.  *Id.* at 261:7-14.

**COUNTER-STATEMENT: Because both plaintiffs never produced**

**Agnicore documentation or records in discovery, defendants cannot**

**determine the truth of this paragraph. Affidavit in Opposition.**

**Defendants' Damages**

59.    ShopLink has never generated any revenue.  Nov. Dep. at 131:16-18; Dec.

17

Dep. at 34:23-25, 36:3-6.

> **COUNTER-STATEMENT: Shoplink had revenue. Shoplink had**
>
> **revenue from Sundial Corp. Affidavit in Opposition.**

60.     ShopLink never had any paying customers prior to September 11, 2016.

Dec. Dep. 133:6-12.

> **Admitted. COUNTER-STATEMENT: Paying customers were**
>
> **prevented because Khmaladze could not even produce a pilot for**
>
> **three years. Affidavit in Opposition.**

61.     Vorotyntsev testified that the investors with whom Tatintsian allegedly

"interfered" are still "all investors in support of [ShopLink]," and even with regard to

potential investors, ShopLink still has "an opportunity to create very meaningful

commercially beneficial relationships. . . . That's how much people believe in us."  Dec.

Dep. at 179:6-22; 180:21-181:7.

> **COUNTER-STATEMENT: Shoplink was caused damages because it**
>
> **had to beg its investors to stay on board and keep giving it a chance.**
>
> **Without plaintiffs' interference, Shoplink would have been in a better**
>
> **position to raise more capital. Affidavit in Opposition.**

62.     No party has produced documents in discovery showing damages from

Plaintiffs' conduct.  Chattoraj Decl. ¶¶ 13-14.

> **COUNTER-STATEMENT: Documents have been produced in**
>
> **discovery showing damages. Some of the damages include the Sundial**

**pilot being killed by litigation, the inability to launch its business, the**

**Shoplink name forever ruined, etc.**

63.    No party has produced documents in discovery showing damages from

Defendants' engagement of Khmaladze, as opposed to other software engineers, in

reliance on Khmaladze's promises.  Chattoraj Decl. ¶ 13.

> **COUNTER-STATEMENT: This statement is vague and confusing**
>
> **and does not accurately address damages. The main point is that**
>
> **Khmaladze breached duties when he let Shoplink down, viciously, and**
>
> **sold out to the wrongdoer who competed illegally. Khmaladze**
>
> **breached the contract, and the subject of other possible CTO's who**
>
> **could have been hired is irrelevant to claims and defenses for the case.**
>
> **Affidavit in Opposition.**

64.    Defendants testified that they have retained other developers to continue to

develop software after Khmaladze's departure.  Dec. Dep. 99:14-100:13, 102:2-5.

> **Admitted. COUNTER-STATEMENT: Shoplink has had multiple**
>
> **software developers over the years.**

## Interference

65.    Defendants authorized Khmaladze to communicate with Tatintsian

regarding the business.  Pl. Dep. 210:10-11.

> **COUNTER-STATEMENT: Paragraph 65 is false. Vorotyntsev gave**
>
> **plaintiff specific instructions to not engage with Tatintsian. Exhibit**

**"17", in the Tatintsian motion is an email showing that Tatintsian was**

**told to not talk to**

**Khmaladze, team members, or affiliated companies. Paragraph 65 is**

**quite inconsistent with Shoplink's policy of not having**

**communications with Tatintsian. Affidavit in Opposition.**

66.    Defendants testified that they were not aware of any communications by Khmaladze directly with any ShopLink investors other than Tatintsian.  Dec. Dep. 120:12-20, 121-7-14.

**Admitted.**

67.    No documents have been produced by any party showing communications by Khmaladze with any ShopLink investors.  Chattoraj Decl. ¶ 11.

**COUNTER-STATEMENT: Khmaladze did not have to communicate**

**directly, as Zubchevich and Tatintsian did so on his behalf. Affidavit**

**in Opposition.**

68.    No documents have been produced by any party showing Khmaladze's awareness of any communications by Tatintsian or others with ShopLink investors. Chattoraj Decl. ¶ 12.

**COUNTER-STATEMENT: Paragraph 68 is false. Those documents**

**exist. Affidavit in Opposition.**

**<u>Unfair Competition</u>**

69.    No evidence has been produced by any party showing that Defendants'

intellectual property was misappropriated by Khmaladze.  Chattoraj Decl. ¶ 14.

> **COUNTER-STATEMENT: Paragraph 69 is false. The Khmaladze deposition transcript, a document, confirms that. Monetize Your Influence was Shoplink's property. Exhibit 2, page 147, lines 22-23. Monetize Your Influence is what Khmaladze worked on at Agnicore. Exhibit 3, page 69, line 22 to page 70, line 5; Exhibit 3, Page 232, lines 2-12. Affidavit in Opposition.**

70.    No evidence or testimony has been produced by any party showing that ShopLink suffered damages from the alleged unfair competition.  Chattoraj Decl. ¶ 13.

> **COUNTER-STATEMENT: Paragraph 70 is false. Khmaladze caused damages to ShopLink including an inability to use and develop its source code, an inability to further develop its technology for its business model, a loss of personnel to develop the technology, ShopLink lost contracts, had business negotiations break down, had investors back out, and had a more difficult time raising capital, all of which caused severe damage to ShopLink and the other corporate defendants, including destruction of ShopLink. See, for example, the Vorotyntsev deposition transcripts or the opposition to the Tatintsian motion for summary judgment. Affidavit in Opposition.**

### Conversion

71.    Tatintsian provided a copy of a ShopLink August 2016 bank statement

that appeared to show substantial withdrawals and expenditures by Vorotyntsev of company funds for personal purposes.  Chattoraj Decl. Exs. 12-13; Pl. Dep. 282:7-286:10

> **COUNTER-STATEMENT: This paragraph is immaterial to the conversion cause of action or defense. However, it does show Tatintsian's efforts to influence and groom Khmaladze, by inducing him to betray Shoplink.**
>
> **Affidavit in Opposition.**

72.     Khmaladze became aware of the involvement of Justin Sher, whom he believed to be a criminal defense attorney representing Vorotyntsev or the entities, on or about September 11, 2016.  Chattoraj Decl. Ex. 11; Pl. Dep. 326:5-331:7.

> **COUNTER-STATEMENT: Khmaladze knew about it all along, well before September 11, 2016. Affidavit in Opposition.**

73.     Khmaladze testified that he blocked Vorotyntsev's access to the source code to preserve a forensic copy.  Pl. Dep. at 311:4-9.

> **COUNTER-STATEMENT: Paragraph 73 is false. Such an excuse is an after-the-fact, self-serving, manufactured "reason" for acting improperly and unlawfully. Plaintiff did not need to preserve anything, as it was preserved by the service, and all he had to do was limit Vorotyntsev's ability to change or delete the code. Blocking was done to disrupt Shoplink's ability to pursue its business with Readerlink, which was the main assault target for Tatintsian and**

22

**Khmaladze, and the one they went on to launch with Shoplink's code just six months later. Affidavit in Opposition.**

74.    Khmaladze provided Vorotyntsev with a copy of all code to which Vorotyntsev had been denied access. *Id.* 311:18-23; 314:3-7.

**COUNTER-STATEMENT: Paragraph 74 is untrue. The code was corrupted and incomplete, and defendants had no way of verifying it against a repository database. Vorotyntsev could not tell whether the code returned was truly the code. Exhibit 2, page 95, line 15 to page 99, line 6. Affidavit in Opposition.**

75.    Defendants admitted that Khmaladze had returned a copy of "certain source code" to them. ShopLink Amended Counterclaims, dated Jan. 27, 2017 (ECF Doc. No. 36) ("ShopLink Am. Countercl.") ¶ 115; Aum Code LLC and IT Adapter LLC Amended Counterclaims, dated Jan. 27, 2017 (ECF Doc. No. 37) ("Aum Code Am. Countercl.") ¶ 115.

**COUNTER-STATEMENT: Some code was returned, but not all of it, and what was returned was intentionally corrupted. The code was incomplete and would not launch. (Exhibit 2, page 125, lines 5-13) and was not running software. Exhibit 2, page 125, line 17.**

76.    Defendants admitted that Khmaladze returned a copy of Vorotyntsev's archived itadapter.com email account. ShopLink Am. Countercl. ¶ 115; Aum Code Am. Countercl. ¶ 115.

**COUNTER-STATEMENT: The email account was incomplete as all the emails which had Khmaladze-signed employment agreements were gone.**

**Affidavit in Opposition.**

77.     Khmaladze also provided a full copy of all documentation, demos and presentations in his possession in connection with that software.  Chattoraj Decl. Ex. 14.

**COUNTER-STATEMENT: What was provided is incomplete, as there was no way to verify. Affidavit in Opposition.**

78.     At their deposition, Defendants acknowledged that Khmaladze returned a copy of the source code to them, and they could not identify any aspects of the code that had been altered, modified, deleted or omitted.  Nov. Dep. 97:15-99:6; Dec. Dep. 98:2-99:6.

**COUNTER-STATEMENT: Paragraph 78 is untrue. It was impossible to acknowledge that a "copy" was returned as defendants could not identify what was altered, modified, deleted or omitted, and that was because defendants could not check the "copy" against the original repository database. Affidavit in Opposition.**

79.     After Khmaladze returned the source code, Vorotyntsev worked with other developers to compile it, test it, and utilize it for demonstrations.  Chattoraj Decl. Ex. 15; Dec. Dep. 99:7-103:14.

**Admitted that source code was returned. COUNTER-STATEMENT:**

> **However, the rest of the paragraph is inaccurate. There was an *attempt* to compile, test and utilize, but defendants and the developers could not get the code to run. The code was incomplete and would not launch. (Exhibit 2, page 125, lines 5-13) and was not running software. Exhibit 2, page 125, line 17.**

80.    One of the developers engaged by Defendants was Denis Latushkin.  Dec. Dep. 100:7-13.

> **Admitted.**

81.    Latushkin had worked on the ShopLink project after Dmitriy Khmaladze "brought him on" in 2013.  Dec. Dep. 101:24-102:5.

> **Admitted.**

82.    Based on the server signatures at the bottom of the screen captures, these screen captures show that ShopLink code was being used in 2017 to serve a "readers.cash" and other domains owned by ShopLink or other Vorotyntsev entities. Chattoraj Decl. Ex. 15; Dec. Dep. 101:4-12.

> **Admitted that source code was used, however, the rest of the paragraph is inaccurate. COUNTERSATEMENT: Defendants tried but could not get the code to compile properly. Exhibit 2, page 125, lines 5-13.**

83.    Defendants have not produced any evidence showing that Khmaladze's alleged conversion of the source code prevented ShopLink from launching its alleged

product.  Chattoraj Decl. ¶ 15.

> **COUNTER-STATEMENT: It is unequivocal that Shoplink could not launch the code and had to abandon it after 6 months. Vorotyntsev stated so at his deposition. Exhibit 2, page 125, lines 5-13.**

### Confidentiality

84.    Dmitriy Khmaladze signed the Confidentiality, Non-Disclosure and Non-Circumvention Agreement ("NDA"), as Chief Executive Officer of ITAdapter Corp., on February 4, 2013.  Chattoraj Decl. Ex. 4.

> **Admitted.**

85.    When asked what "trade secret" ShopLink disclosed to Plaintiffs that was unknown to the public in January 2013, Defendants responded that ShopLink would provide products to consumers "through recommendations."  Dec. Dep. 50:23-51:2.

> **COUNTER-STATEMENT: The confidentiality of Shoplink's model, plan, and technology cannot even be discussed here. Khmaladze and Tatintsian stole the patent application, one month after they have started their new company, by having Khmaladze file as a single author and removing Vorotyntsev from an extension application, for a patent they claim was meaningless and worthless. Affidavit in Opposition.**

86.    At that time, a number of other publicly filed patent applications disclosed ideas and inventions that were substantially similar to that proposed for ShopLink.

Chattoraj Decl. Ex. 20.

> **COUNTER-STATEMENT: Paragraph 86 is a vague and sweeping generalization. The only entity that can legitimately conclude similarity is the Patent Office, after an extensive patent application prosecution, which Shoplink was denied by virtue of the malicious intent and theft of such patent application by Khmaladze. Affidavit in Opposition.**

87.    The confidential, non-public information that was provided to Plaintiffs by ShopLink pursuant to the NDA was based in part on publicly available research papers by Sinan Aral, Dylan Walker, and Lev Muchnik.  Dec. Dep. 46:11-12, 51:4-54:12; Chattoraj Decl. Exs. 16-19.

> **COUNTER-STATEMENT: Paragraph 87 is untrue. Shoplink was formed by Vorotyntsev and the idea was crystalized long before such research became available. Vorotyntsev had not come onto this research until 2012. Exhibit 2, page 26, line 16 to page 27, line 2.**

88.    ShopLink also provided to Plaintiffs the non-public provisional patent application, which was filed on November 5, 2012, to Plaintiffs.  Vorotyntsev Dec. Dep. 46:11-12; Chattoraj Decl. Ex. 23.

> **COUNTER-STATEMENT: Paragraph 88 is vague as stated. This was the application that Khmaladze was added to and which he later stole, after conspiring with Tatintsian. Whether it was "provided" in**

discovery is immaterial. **Affidavit in Opposition.**

89.    Emails circulated among Vorotyntsev, Khmaladze and Gregory Antrim from October 24 to October 28, 2013, in the course of preparing Patent Application No. 14/071,137 indicate that "lots of" the application "is a copy and paste from the provisional" application and that examples and "70%" of descriptions were taken from the provisional application.  Chattoraj Decl. Exs. 21-22.

**COUNTER-STATEMENT: The provisional application was filed by Pryor Cashman and listed Vorotyntsev at the sole inventor/author, but a year later, in 2013, when the actual application was filed, Vorotyntsev added Khmaladze to that application and Khmaladze became a co-author of that application. Tatintsian knew that the application assignment had taken place in October of 2015, and saw the actual FedEx package sent by Khmaladze, which contained both assignments, one for the Shoplink patent and the other for data tagging patent, which was originally Khmaladze's idea, and was supposed to be assigned to AumCode LLC. The Shoplink patent assignment by Khmaladze was turned in by Vorotyntsev physically to Sofer Haroun, at their location in New York. On December 1, 2016 there was a filing made to extend the time to reply to the initial patent denial, and it was filed by Khmaladze, and it listed Khmaladze as the only inventor on that application. Plaintiffs have hijacked the patent**

> **application, making it impossible for Shoplink to prosecute and**
>
> **defend its patent application. Affidavit in Opposition.**

90.    Gregory Antrim of Sofer & Haroun was ShopLink' patent counsel, responsible for prosecuting patents.  Dec. Dep. 114:19-115:5.

> **COUNTER-STATEMENT: Paragraph 90 is incorrect. Antrim was**
>
> **responsible for filing the initial claims.**

91.    The contents of the non-public provisional patent application were included in Patent Application No. 14/071,137, filed on November 4, 2013.  *Id*.

> **Admitted. COUNTER-STATEMENT: On this very patent**
>
> **application Khmaladze had fraudulently claimed he was the inventor,**
>
> **just two months after Tatintsian's lawsuit. Neither plaintiff has**
>
> **answered any of defendants' discovery demands, and are now**
>
> **claiming no evidence was produced, while all the evidence was on**
>
> **Khmaladze-controlled email servers. Affidavit in Opposition.**

92.    On November 4, 2013, patent application no. 14/071,137 was filed with the U.S. Patent and Trademark Office, with Vorotyntsev and Khmaladze listed as inventors.  Chattoraj Decl. Ex. 24.

> **Admitted that the application was filed. COUNTERSATEMENT:**
>
> **This was the precise application that Khmaladze wrongfully took,**
>
> **misappropriated, and converted in or about November 2016, with**
>
> **Tatintsian paying Khmaladze for it. Affidavit in Opposition.**

93.     This patent application was published on July 10, 2014. *Id.*; Compl. ¶ 27; ShopLink Answer ¶ 27; Aum Code Answer ¶ 27.

**Admitted.**

94.     On June 2, 2016, Application No. 14/071,137 was rejected by the patent office because it "[did] not amount to significantly more than [an] abstract idea." Chattoraj Decl. Ex. 25, at 4; Compl. ¶ 27; ShopLink Answer ¶ 27; Aum Code Answer ¶ 27.

**Admitted and by way of further answer, it is not especially significant or material that the application was rejected as that is typical and customary for patent applications. Affidavit in Opposition.**

95.     The patent office also rejected the claims in the patent because they were not patentable over Rolf et al., U.S. Patent No. 2007/0219871, and in view of other patents.  Chattoraj Decl. Ex. 25 at 6-14; Chattoraj Decl. Ex. 26; Compl. ¶ 27; ShopLink Answer ¶ 27; Aum Code Answer ¶ 27.

**COUNTER-STATEMENT: Paragraph 95 is incorrect, as makes it a determination that can not be made without prosecution of the patent.**

96.     The concepts set forth in the Rolf patent, "Methods for Developing a Multilevel Person to Person Affiliate Marketing Network Using Electronic Communications," United States Patent No. 2007/0219871, anticipate the claims in Patent Application No. 14/071-137.

**COUNTER-STATEMENT: Paragraph 9 is incorrect, and can only be**

**known through patent prosecution, which was made impossible by**

**Khmaladze hijacking the application, right after he and Tatintsian**

**filed their fabrications. Affidavit in Opposition.**

97.    On March 13, 2014, patent application no. 14/209,098 was filed with the

U.S. Patent and Trademark Office, with Vorotyntsev and Khmaladze listed as inventors.

Chattoraj Decl. Ex. 27.

> **Admitted and by way of further response, this patent is the patent for**
>
> **data tagging, which Khmaladze convinced Vorotyntsev to file in case**
>
> **there was anything to it.**

98.    This patent application was published on February 19, 2015.  *Id.*; Compl.

¶ 27; ShopLink Answer ¶ 27; Aum Code Answer ¶ 27.

> **Admitted.**

99.    This patent application was eventually rejected by the patent office.

Compl. ¶ 27; ShopLink Answer ¶ 27; Aum Code Answer ¶ 27.

> **Admitted.**

## Copyright

100.    No party has produced in discovery a copy of any "contract for hire"

between Khmaladze and Defendants.  Chattoraj Decl. ¶ 3.

> **COUNTER-STATEMENT: The contract for hire executed by**
>
> **Khmaladze was resident data on the IT Adapter email server which**
>
> **Khmaladze controlled and blocked access to, until those were**

**removed. The only other copy was on a hard drive of a laptop that**

**was used for Skype communications. Affidavit in Opposition.**

101.    No party has produced in discovery a copy of any "work for hire"

agreement between Khmaladze and Defendants. *Id.* ¶ 4.

> **COUNTER-STATEMENT: Vorotyntsev produced the copy of the**
>
> **work for hire agreement, from Ira Hecht, with full documents that**
>
> **were prepared at the time and sent to Khmaladze by FedEx in 2014.**
>
> **Khmaladze returned the signed copy via mail back to Vorotyntsev in**
>
> **Los Angeles, in December of 2014, but Vorotyntsev had already left for**
>
> **New York City by then, and that package was lost. Khmaladze also**
>
> **sent a scanned version of the same documents via email to Vorotyntsev**
>
> **to mikhail@itadapter.com address, but Vorotyntsev had no access to it**
>
> **after Tatintsian sued and Khmaladze had deleted it from the mailbox,**
>
> **when he returned the outtakes from Vorotyntsev's mail folder. This is**
>
> **the same as when Khmaladze deleted the source code from Google**
>
> **escrow, which was placed there in September 2015.**
>
> **Affidavit in Opposition.**

102.    No party has produced in discovery a copy of any "work for hire"

agreement between ITAdapter Corporation, Inc. and Defendants. *Id.*

> **COUNTER-STATEMENT: A "work for hire" agreement was in**
>
> **Skype messages that Khmaladze refused to produce. Affidavit in**

**Opposition.**

103.    No party has produced in discovery a copy of any written copyright license from Plaintiffs to Defendants. *Id.*; Dec. Dep. 36:22-37:6.

> **COUNTER-STATEMENT: The copyright license was prepared by Zahos, and was to have been completed once defendants had the lawyers. Affidavit in Opposition.**

## COUNTERCLAIM-PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

*The following eight paragraphs, 104 through 111, are from the opposition to the Tatintsian motion and cite the exhibits in the Tatintsian opposition.*

**Facts Related to Competency of Counterclaim-Defendant, Dimitry Khmaladze**

104.    Khmaladze is strictly a technical worker, whose employment history solely consists of computer development. Exhibit "C", p.34, l.17-p.72., l.15.

105.    Khmaladze has no experience in business management, executive business decision-making, accounting, forensic accounting, bookkeeping, tax preparation, tax analysis, or corporate ethics and compliance. Exhibit "C", p.280, l.5-8.

106.    Khmaladze really did not know a thing about Shoplink's contracts with vendors. Exhibit "C", p.224, l.1-5.

**Facts Related to Credibility of Counterclaim-Defendant, Dimitry Khmaladze**

107.    Khmaladze has fears and phobias as to criminal charges being filed against him and, accordingly, is self-serving with his statements of facts. Exhibit "C", p.213, l.7-p.217, l.13.

108.    Khmaladze is a puppet to Tatintsian and has been influenced and coerced to parrot Tatintsian regarding versions of facts and events material to the two cases. Exhibit "C", p.216, l.16-20. Paragraph 78, above. Khmaldze suit was filed just a few weeks after Tatintsian suit.

109.    Even though Khmaladze said that ShopLink was "light years" from actualization (Exhibit "C", p.266, l.19-25) for a system he worked on from 2013 to 2016 (Exhibit "C", p.150, l.2-p.153, l.23), the system he developed for the Tatintsian copycat had a product alpha-capable in months, Exhibit "C", p.234, l.17-22; p.235, l.9-14; p.236, l.5-7.

**Facts Related to Bias of Counterclaim-Defendant, Dimitry Khmaladze**

110.    Khmaladze has fears and phobias as to criminal charges being filed against him and, accordingly, is self-serving with his statements of facts. Exhibit "C", p.213, l.7-p.217, l.13; had to stop deposition due to severe anxiety act; generally, many allegations and opinions as to criminality, p.284-305; generally, fear of authorities coming after him, p.310-320.

111.    Khmaladze is a puppet to Tatintsian and has been influenced and coerced to parrot Tatintsian regarding versions of facts and events material to the two cases.

Exhibit "C", p.216, l.16-20. Paragraph 78, above. Khmaldze suit was filed just a few

weeks after Tatintsian suit.

**Facts Related to Second Claim, Rescission of Asset Purchase Agreement Based on Failure of Consideration against defendants, AUM Code LLC and Mikhail Vorotyntsev**

112.    Plaintiff, Dmitry Khmaladze, was compensated over $300,000 in salary by

defendants; Affidavit of Timeline ("Timeline"), February 3, 2013. This compensation

included

$120,000 in salary per year. Exhibit 3, page 75, line 24 to page 76, line 3.

113.    Plaintiff was compensated by being made a 40% owner of defendant,

AUM Code,

LLC. Timeline, September 2013 and April 2015. Exhibit 3, page 75, lines 11-19.

114.    Plaintiff was compensated by receiving an expensive trip to Mexico.

Timeline,

November and December, 2015. Affidavit in Opposition.

**Facts Related to Fifth Claim, Declaratory Judgment of Material Breach of Asset Purchase Agreement against defendant, Aum Code LLC**

115.    Defendant, Shoplink, did not fail to perform any duty and did not breach

any agreement with Khmaladze, especially as to stock ownership and/or stock vesting, as

Khmaladze, himself, was first to break promises and breach the agreement by abandoning

Shoplink for another company that was wrongfully competing with Shoplink. Further,

Khmaladze broke promises and breached his own contractual and fiduciary duties by taking the Shoplink source code with him. Affidavit in Opposition.

**Facts Related to Sixth Claim, Declaratory Judgment of Non-Enforceability of Non-Competition and Non-Solicitation Covenants in Asset Purchase Agreement**

116.    Defendant, Shoplink, had a Non-Disclosure Agreement and required that it be signed by plaintiff. Timeline, January 22, 2013. Affidavit in Opposition.

117.    Plaintiff was aware of the Non-Disclosure Agreement. Timeline February 3, 2013.

118.    Plaintiff agreed to sign the Non-Disclosure Agreement and did, in fact, sign the Non-Disclosure Agreement. Timeline, February 3, 2013. Paragraph 84, above.

119.    Plaintiff breached the Non-Disclosure Agreement by taking the confidential and private source code with him when he left Shoplink and became co-owner of a new company with Tatintsian, and there, the private and confidential source code was revealed, shared, and exploited by third-party competitor, Tatintsian. Timeline, October, 2016. Affidavit in Opposition.

**Facts Related to Breach of Contract Counterclaim**

120.    There was a contract between Shoplink and Khmaladze for him to prepare a technology platform and source code, in exchange for compensation. Affidavit in Opposition.

121.    The contract was written and oral. Affidavit in Opposition.

122.    Khmaladze received salary, stock, and luxury vacations as his

compensation

package and therefore, the contract had consideration. Exhibit 3, page page 75, line 24 to

page

76, line 3.

123.    It was understood that the contract, which was formed in New York and

being

performed in New York, required good faith and fair dealing. Affidavit in Opposition.

124.    When Khmaladze broke the contract by not delivering a technology

platform with

source code, Shoplink was unable to sell products and make profits, thus, sustaining

financial

damages. Although he supposedly worked on developing the technology over three years,

Shoplink's technology did not have social network coding (Exhibit 3, page 88, lines 21-

25), did

not have code for Shoplink's idea (Exhibit 3, page 98, lines  22-23), the demo software

could not

handle the ultimate application of selling a product (Exhibit  3, page 100, line 22 to page

101,

line 3), and the source code had no charge processing or accounting functions (Exhibit 3,

page

102, lines 18-20). Plaintiff also did not code R-7 for design of master data structures.

Exhibit 3

, page 267, lines 20-24. Plaintiff had no excuse for not producing as his only work during

the

relevant years, after he spoke with Vorotyntsev in January, 2013, was for his own

company,

ITAdapter. Exhibit 3, page 318, line 23 to page 319, line 5. Affidavit in Opposition.


**Facts Related to Shoplink's Breach of Fiduciary Duty Counterclaim**

125.    Plaintiff, Dmitry Khmaladze was the Chief Technology Officer ("CTO")

of

Shoplink. Timeline, December, 2012 - January, 2013 and March, 2016. Exhibit 3, page

69, line

25 to page 70, line 2. Also, he was CTO of AUM Code (Exhibit 3, page 190, line 23 to

page 191,

line 2), a subsidiary of Shoplink, and CTO of ITAdapter LLC (Exhibit 3, page 191, lines

22-24),

also Shoplink's subsidiary.

126.    As an executive of the company and CTO, plaintiff had fiduciary duties,

as well

as employee loyalty duties, to Shoplink and his co-owner, Vorotyntsev. Affidavit in

Opposition.

127.    Vorotyntsev shared private, non-public information with Khmaladze.

Exhibit 2,

page 46, lines 2-18.

128.    Plaintiff breached his fiduciary duty by abandoning Shoplink, leaving it in

a lurch,

taking the source code with him, blocking Shoplink's access to the source code, and

forming a

new company with Tatintsian to compete against Shoplink. Timeline, October, 2016.

Affidavit in

Opposition.

129.    Plaintiff also breached duties by speaking with Tatintsian about R-7, its

functionality its demo, and its pilot, all of which were confidential matters. Exhibit 3,

page 221,

line 15; page 222, line 21.

130.    Plaintiff took and converted the source code. Timeline, October, 2016.

Affidavit in Opposition.

131.    Defendant, Shoplink, has the source code, but it is in an unusable form.

Timeline, October and November 2016. Affidavit in Opposition.

**Facts Related to AUM Code LLC's Breach of Fiduciary Duty Counterclaim**

132.     Plaintiff, Dmitry Khmaladze was the Chief Technology Officer ("CTO")

of

AUM Code LLC. Timeline, December, 2012 - January, 2013 and March, 2016. Exhibit 3,

page

69, line 25 to page 70, line 2. He was CTO of AUM Code (Exhibit 3, page 190, line 23 to

page 191, line 2), a subsidiary of Shoplink, and CTO of ITAdapter LLC (Exhibit 3, page

191,

lines 22-24), also Shoplink's subsidiary.

133.     As an executive of the company and CTO, plaintiff had fiduciary duties,

as well

as employee loyalty duties, to AUM Code LLC and his co-owner, Shoplink and

Vorotyntsev.

Affidavit in Opposition.

134.     Vorotyntsev shared private, non-public information with Khmaladze.

Exhibit 2,

page 46, lines 2-18.

135.     Plaintiff breached his fiduciary duty by abandoning Shoplink, leaving it in

a lurch,

taking the source code with him, blocking Shoplink's access to the source code, and

forming a

new company with Tatintsian to compete against Shoplink. Timeline, October, 2016.

Affidavit in

Opposition.

136.    Plaintiff also breached duties by speaking with Tatintsian about R-7, its

functionality its demo, and its pilot, all of which were confidential matters. Exhibit 3,

page 221,

line 15; page 222, line 21.

137.    Plaintiff took and converted the source code. Timeline, October, 2016.

Affidavit in Opposition.

138.    Defendant, Shoplink, has the source code, but it is in an unusable form.

Timeline, October and November 2016. Affidavit in Opposition.

**<u>Facts Related to Unfair Competition Counterclaim</u>**

139.    Plaintiff unfairly competed by abandoning Shoplink, leaving it in a lurch,

taking

the source code with him, blocking Shoplink's access to the source code, and forming a

new

company with Tatintsian to compete against Shoplink. Timeline, October, 2016.

Affidavit in

Opposition.

140.    Plaintiff's joint venture and co-ownership with Tatintsian was a civil

conspiracy

to unfairly compete, as they intended to form a new, co-owned business, did in fact

launch the

new business, and otherwise acted in concert by working together and developing

technology for

an ecommerce platform that copied the business model of Shoplink. Timeline, October,

2016.

Affidavit in Opposition.

141.    Plaintiff spoke with Tatintsian prior to the lawsuit (Exhibit 3, page 203,

lines 7-

22), between September 1st and 9th (Exhibit 3, page 206, lines 11 to page 207, line16),

and again

when Tatintsian visited him in Cleveland on September 7th, 8th or 9th (Exhibit 3, page

208, lines

 16-17).

142.    Plaintiff also spoke with Tatintsian about Agnicore before the lawsuit was

filed.

Exhibit 3, page 225, lines 8-20.

143.    Shoplink's know-how and ideas were private, trade secrets. Exhibit 2,

page 39,

lines 21-25.

144.    Khmaladze told Vorotyntsev that Tatintsian was trying to get him to sell

out.

Exhibit 3, page 122, line 22 to page 123, line 9. Affidavit in Opposition.

145.    Plaintiff misappropriated the source code by stealing it. Timeline, August

30 and 31, 2016. Affidavit in Opposition.

146.    Plaintiff misappropriated the source code by blocking it and blocking

Vorotyntsev. Timeline, September, 2016, Exhibit 3, page 213, line 24 to page 214, line 4.

147.    Plaintiff also removed Vorotyntsev from the Assembla repository which

allowed

access for programming and revisions to the code. Exhibit 3, page 217, lines 8-13; page

309,

lines 12-16.

148.    Other unfair acts of plaintiff, Dmitry Khmaladze, include taking the

development

team to new business formed with Tatintsian (Timeline, October, 2016. Exhibit 3, page

83, lines

14-22), and taking Shoplink's clients; in fact, the copycat business, Agnicore, took

Shoplink's

client, Readerlink. Exhibit 3, page 234, lines 17-22. Affidavit in Opposition.

149.    Vorotyntsev summarized the unfair competition claim by stating at his

deposition:

43

"Mr. Khmaladze blocked my ability to communicate with all my developers, slandered me and

my wife and essentially told lies about me to the developers. Mr. Khmaladze had been in charge

of developing software code for ShopLink that he stole and then did not return in its entirety. So

we were unable to proceed commercially." Exhibit 2, page 124, lines 16-24.

**<u>Facts Related to Conversion Counterclaim</u>**

150.    Plaintiff's acts were direct acts of conversion. Plaintiff directly converted the

property of defendant Shoplink by taking Shoplink's source code and other related technology.

Timeline, August 30 and 31, 2016. Affidavit in Opposition.

151.    Plaintiff converted via a civil conspiracy by abandoning Shoplink, leaving it in a

 lurch, and especially by taking the source code with him and blocking Shoplink's access to the

source code, and then forming a new company with Tatintsian to compete against Shoplink.

Timeline, October, 2016. While plaintiff self-servingly concluded that Agnicore's code had a

different code base, different build, and different framework structure, he evaded

explaining

this at his deposition by hiding behind the answer of not wanting to go into a "deep

technical

conversation". Exhibit 3, page 308, lines 15-25. Affidavit in Opposition.

152.    Plaintiff misappropriated the source code by stealing it. Timeline, Aug 30

and 31

2016. Affidavit in Opposition.

153.    At the new company, Agnicore, plaintiff was working on Monetize Your

Influence, which was Shoplink's program. Exhibit 3, page 87, lines 2-8. Agnicore had

Monetize

Your Influence. Exhibit 3, page 231, line 22 to page 232, line 2. Affidavit in Opposition.

154.    Khmaladze also caused Vorotyntsev to have no access to the ITAdapter

emails.

Exhibit 2, page 91, lines 15-21; page 92, lines 6-16. Affidavit in Opposition.

155.    Khmaladze also blocked the code so that Shoplink could not access it.

Timeline,

September, 2016. Affidavit in Opposition.

156.    The source code was returned to Shoplink in unusable form. Timeline,

November,

2016. Affidavit in Opposition.

**Facts Related to Promissory Estoppel Counterclaim**

157.    Plaintiff, Dmitry Khmaladze, never delivered a functional source code for

Shoplink  that was fully coded, compiled and tested, and, accordingly he never performed

the

work he promised to do. Affidavit in Opposition.

158.    Defendant Shoplink, does not have the final work product of plaintiff, the

source

code that he promised to design, analyze, code and complete. Affidavit in Opposition.

159.    The promises of plaintiff to deliver a technology platform with source

code were

definite, clear, and unambiguous promises. Affidavit in Opposition.

160.    The specific promise to deliver a technology platform to Shoplink

consisting of

source code was never kept or fulfilled by plaintiff, Dmitry Khmaladze, and,

accordingly, his

promise was violated. Affidavit in Opposition.

161.    Shoplink's reliance on Khmaladze's promises was reasonable and

foreseeable

because he had been highly recommended and known to people trusted by Mikhail

Vorotyntsev,

and because he had a long career in technology as a system architect. Affidavit in

Opposition.

162.    By relying on Khmaladze's promises, Shoplink had damages. By having

its code

taken from it, Shoplink was damaged, and further damaged by the start-up competitor,

Agnicocre, Tatintsian's and Khmaladze's copycat competitor that started up on

Shoplink's

business model, business plan, and technology platform. Affidavit in Opposition.

163.    Plaintiff's retention of salary in light of not delivering a functional,

useable final

work product is unethical, unjust, immoral, and wrong. Affidavit in Opposition.

**Facts Related to Unjust Enrichment Counterclaim**

164.    Plaintiff benefitted by being paid, receiving stock, and receiving high-end

fringe

benefits such as paid vacations to Mexico. Affidavit in Opposition.

165.    Khmaladze benefitted at Shoplink's expense as Shoplink paid for the

salary,

stock, and vacation. Affidavit in Opposition.

166.    Morality, equity, ethics, the honor code, good faith, and good conscience

require

restitution from Khmaladze, as Shoplink paid for the benefits and yet, Khmaladze failed

to deliver a work product that worked and was functional, after years of being paid salary and

having years to complete the task. He failed to deliver a functional work product; meanwhile he

took that code that was developed over several years and shared it with Tatintsian and completed

development of the code at the company he formed with Tatintsian. Affidavit in Opposition.

167.    By having its code taken from it, Shoplink was damaged, and further, it was

damaged by the start-up competitor, Agnicore, which competed unfairly with Shoplink. Affidavit

in Opposition.

**Facts Related to Tortious Interference with Prospective Business Relations Counterclaim**

168.    Plaintiff intentionally interfered with Shoplink in a civil conspiracy, by abandoning Shoplink, leaving it in a lurch, taking the source code with him, blocking Shoplink's

access to the source code, and forming a new company with Tatintsian to compete against

Shoplink, and especially by hiring Zubchevich to call Shoplinks's investors, lie to them, and

harass them. Timeline, October, 2016. Affidavit in Opposition.

169.    Dmitry Khmaladze and Gary Tatintsian formed a new company, Agnicore, and

were co-owners of the business. Timeline, October 2016. Affidavit in Opposition.

170.    Younis Zubchevich is an executive with Agnicore and an affiliate company,

Tatintsian Investments, where he is a director. Timeline October 2016. Affidavit in

Opposition.

171.    There were communications ordered, managed, directed, and/or controlled by

plaintiff, who had Zubchevich call Shoplink's investors and harass them for 18 months.

Timeline, October 2016. Affidavit in Opposition.

172.    The communications were wrongful as Zubchevich said Vorotyntsev stole money

from Shoplink. Timeline, October, 2015. Affidavit in Opposition.

173.    Further, Zubchevich attempted to persuade investors to leave Shoplink and invest

with Gary Tatintsian. Timeline, October, 2016. Affidavit in Opposition.

174.    Plaintiff participated in the civil conspiracy on a general level by being a

co-

owner, responsible for the acts of underlings, and specifically by developing the

technology for

the new company, which was a theft of the Shoplink intellectual property. Affidavit in

Opposition.

175.    Investors, such as Ken Lanyon, as well as prospective vendor-clients, were

lied to

and harassed. Affidavit in Opposition.

176.    The contracts interfered with included the investors' subscription

agreements and

the contracts and negotiations that Shoplink had with potential vendor-clients. In fact, the

copycat business, Agnicore, took Shoplink's client, Readerlink. Exhibit 3, page 234, lines

17-22.

Affidavit in Opposition.

**Facts Related to Non-Disclosure Agreement Counterclaims**

177.    The information as to Shoplink's business model, including its source

code for its

technology platform, was confidential and private. R-7 was Shoplink's code (Exhibit 3,

page128,

lines 7-17) and it was proprietary, not public and not open-sourced. Exhibit 3, page 104,

lines 18-

25. Affidavit in Opposition.

178.    The Shoplink idea was not public. Exhibit 2, page 50, lines 6-13. Affidavit

in

Opposition.

179.    The information as to Shoplink's business model, including its source

code for its

technology platform, was not public. R-7 was Shoplink's code (Exhibit 3, page128, lines

7-17)

and it was proprietary, not public and not open-sourced. Exhibit 3, page 104, lines 18-

25. Affidavit in Opposition.

180.    The promise to not disclose and not solicit was important and vital to

Shoplink in

terms of what it relied upon from Khmaladze and what it expected out of Khmaladze due

to the

competitive ecommerce environment, the threat of competitors poaching key personnel,

and the

threat of copying intellectual property which was rampant in hi-tech circles. Affidavit in

Opposition.

**Facts Related to Copyright/Declaratory Judgment Counterclaim**

181.    Defendant, Shoplink, as owner of all of the company's assets, and as

employer of

plaintiff, was the author of the source code. Affidavit in Opposition.

182.    Plaintiff was hired as a CTO and employee to write the code for the

company and

the company never agreed that he was the owner or had any property rights in the code.

Therefore, this arrangement was work for hire by an employee. Affidavit in Opposition.

183.    Shoplink did not have a license because it owned the software and did not

need

one, and further, the subject of licensure is irrelevant because plaintiff and his corporation

did

not own the software. Affidavit in Opposition.


                                        Respectfully submitted,


Dated: New York, New York              /s/ *Mikhail Vorotyntsev*
       April 6, 2022                   Mikhail Vorotyntsev
                                       Defendant/Counterclaimant, Pro Se