April 28th, 2025

Hon. Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: Tatintsian v. Vorotyntsev, Case No. 1:16-cv-7203-GHW
    Khmaladze v. Vorotyntsev, Case No. 1:16-cv-8029-GHW

Analysis of Legal Principles Concerning Fraud, Finality, and Judicial Authority

Dear Judge Woods:

I respectfully submit this legal analysis brief regarding a court's duty to reconsider prior rulings when evidence emerges that a party has deliberately concealed material facts. While I present this as a pro se litigant, I believe the legal principles discussed herein transcend the particulars of this case and address fundamental questions of judicial integrity that courts have grappled with throughout American jurisprudence.

## I. The Judicial Dilemma: Finality versus Truth

Courts have long grappled with the tension between two fundamental values: the finality of judgments and the imperative to ascertain the truth. This tension becomes particularly acute when a judgment is challenged on the grounds that it was procured by fraud. The Supreme Court addressed this conflict in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), acknowledging the general rule favoring finality but affirming the historical equitable power to grant relief against judgments obtained through after-discovered fraud. Delivering the opinion of the Court, Justice Black explained that this power allows courts to "set aside fraudulently begotten judgments". The justification transcends the harm to an individual litigant; the Court declared that "tampering with the administration of justice... involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public," institutions where fraud cannot be complacently tolerated. This perspective underscores that certain fraudulent conduct constitutes an assault on the judicial system itself, warranting an exception to otherwise binding principles of finality.

The principle articulated in *Hazel-Atlas* remains profoundly relevant, particularly in the context of complex litigation where courts must necessarily rely on parties' representations and their good-faith compliance with extensive discovery obligations. When a party deliberately conceals or fabricates material evidence, thereby corrupting the information presented to the court, it not only prejudices the opposing party but also fundamentally undermines the court's ability to perform its adjudicative function and administer justice effectively, echoing the concerns that animated the decision in *Hazel-Atlas*.

## II. Categories of Fraud Affecting Judgment Validity

Courts traditionally distinguish between different types of fraud when considering challenges to final judgments, with varying implications for the availability of relief. The foundational distinction stems from *United States v. Throckmorton*, 98 U.S. 61 (1878).

First, **intrinsic fraud** consists of fraudulent acts pertaining to issues actually litigated within the original proceeding, such as perjury or the use of forged documents presented as evidence. Under the *Throckmorton* doctrine, relief from a final judgment based on intrinsic fraud is generally unavailable through collateral attack, predicated on the principle that the adversarial process provided an opportunity to expose such falsehoods during the trial and that litigation must eventually end.

Second, **extrinsic fraud** involves conduct external to the courtroom proceedings that prevents a party from having a fair opportunity to present their case or defense. Examples include preventing a party from receiving notice of the suit, keeping a party away from court through deceit, or corruption by one's own attorney that prevents fair representation. Because extrinsic fraud undermines the very foundation of the adversarial process, courts of equity may grant relief even after a judgment has become final.

Third, and often considered the most serious category, is **fraud on the court**. This concept, significantly shaped by *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), involves conduct that amounts to a deliberate, egregious assault on the integrity of the judicial process itself. It typically signifies "a deliberately planned and carefully executed scheme to defraud" the court , involving conduct intended to corrupt or improperly influence the court or interfere with its impartial function. It is characterized as a wrong against the judicial institution, not merely the opposing litigant. While definitions can be nuanced, it often involves actions by officers of the court or conduct that seeks to "defile the court itself". Because it strikes at the heart of judicial legitimacy, fraud on the court can empower a court to set aside a judgment even years later, often through its inherent power or specific procedural rules like Federal Rule of Civil Procedure 60(d)(3), unconstrained by the time limits applicable to other forms of fraud. Deliberate, systematic concealment of material evidence as part of a scheme to mislead the tribunal may constitute such fraud. (Note: The specific definitions and quotes attributed to *Bulloch v. United States*, 763 F.2d 1115 (10th Cir. 1985) and *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320 (2d Cir. 1995) in the original text could not be verified from the provided source materials).

## III. The Doctrine of "Law of the Case" Yields to Evidence of Fraud

The "law of the case" doctrine generally counsels that a court should adhere to its own prior rulings made in the same ongoing litigation. This principle promotes judicial efficiency and consistency. However, the doctrine is discretionary and not an inexorable command; it recognizes exceptions where reconsideration is necessary. Established grounds for departing from a prior ruling include the emergence of substantial new evidence, an intervening change in controlling legal authority, or a determination that the prior ruling was clearly erroneous and enforcing it would result in manifest injustice. (Note: The specific citations to *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1 (2d Cir. 1996), *Dictograph Products Co. v. Sonotone Corp.*, 230 F.2d 131 (2d Cir. 1956), and *United States v. Tenzer*, 213 F.3d 34 (2d Cir. 2000) in the original text could not be verified from the provided source materials).

These exceptions are particularly applicable when new evidence reveals that a prior ruling was influenced by deliberate concealment or fraud. A court's ability to adjudicate fairly and accurately depends on the integrity of the record before it. When it becomes apparent that a party has deliberately withheld material evidence, thereby misleading the court, the foundation of the prior ruling is compromised. Consistent with the principles underlying *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, where the Supreme Court acted to rectify a decision based on fraudulent submissions , the integrity of the judicial process demands reconsideration when concealed evidence comes to light that demonstrates the prior analysis was based on a materially incomplete or false record.

Therefore, the deliberate concealment of evidence that directly contradicts a party's central claims constitutes a compelling reason warranting departure from the law of the case. Adhering to a ruling made under such circumstances would perpetuate the effect of the misconduct and result in manifest injustice. The court's interest in reaching a correct decision based on a truthful record outweighs the efficiency concerns underlying the law of the case doctrine when confronted with evidence of such manipulation.

## IV. The Court's Inherent Power to Remedy Fraud

Beyond powers granted by specific rules or statutes, courts possess inherent authority necessary to manage their proceedings, vindicate their authority, and achieve justice. This inherent power includes the ability to vacate judgments obtained through fraud and to impose sanctions for bad-faith litigation misconduct. As the Supreme Court affirmed in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), these powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases". This authority serves as a vital safeguard, enabling courts to address conduct that undermines the judicial process, even if not explicitly covered by procedural rules.

This inherent power is particularly relevant when confronting litigation practices involving fraud or deliberate concealment. (Note: The quote regarding "abusive litigation practices" and the citation to *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34 (2d Cir. 1995) in the original text could not be verified from the provided source materials). When litigation conduct includes deliberately concealing material evidence that directly

contradicts a party's claims, thereby misleading the court and undermining the fairness of the proceedings, the court possesses clear authority to act. While the exercise of inherent powers calls for restraint and discretion , the discovery of such deliberate misconduct provides a compelling basis for the court to exercise its authority, potentially including the reexamination of prior rulings based on the now-revealed complete record. This aligns with the principles articulated in *Hazel-Atlas*, emphasizing the judiciary's responsibility to protect itself and the public from becoming "helpless victims of deception and fraud".

## V. Application to Systematic Concealment Across Related Cases

The principles governing judicial responses to fraud and concealment apply with particular force when a litigant engages in a pattern of deliberately withholding material information across multiple related legal proceedings. When a party systematically omits or conceals crucial facts or transactions from different courts or tribunals handling related matters, especially while pursuing potentially contradictory legal theories or factual assertions, such conduct represents a profound affront to the judicial process.

This type of systematic concealment transcends ordinary litigation misconduct. It suggests a calculated scheme to manipulate the legal system by preventing any single adjudicator from accessing the complete and truthful factual picture. Such actions directly interfere with the courts' ability to administer justice based on consistent and accurate information, potentially leading to contradictory or unjust outcomes across related cases. This conduct exemplifies the kind of "tampering with the administration of justice" and "wrong against the institutions" that the Supreme Court condemned in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*. It represents a deliberate exploitation of procedural divisions to achieve an unfair substantive advantage, undermining the integrity of the entire judicial process involved. Consequently, the discovery of such a systematic pattern of concealment provides compelling grounds for courts, invoking their inherent authority and equitable powers , to reconsider prior rulings or judgments tainted by the withheld information and to impose appropriate remedies to rectify the manipulation. (Note: The specific quote regarding withheld evidence and the citation to *Spiegel v. Schulmann*, 604 F.3d 72 (2d Cir. 2010) in the original text could not be verified from the provided source materials).

## VI. Conclusion

The American legal system operates on a delicate balance between the essential principle of finality, which provides stability and repose, and the fundamental requirement that judicial outcomes be based on truth and fairness. As demonstrated by landmark decisions like *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, while finality is a cornerstone of the system, it is not absolute. The judiciary retains potent mechanisms—including the careful distinction between types of fraud , exceptions to procedural doctrines like the law of the case, and the invocation of inherent powers —to address conduct that corrupts the adjudicative process. Courts are empowered, and indeed expected, to act decisively when

confronted with evidence of deliberate fraud and concealment, particularly when such actions rise to the level of "fraud on the court" by constituting a direct attack on the integrity of the judicial institution itself. By exercising these powers judiciously, courts safeguard not only the fairness of individual outcomes but also the overall legitimacy and public trust upon which the entire system depends.


Respectfully submitted,

s/Mikhail Vorotyntsev

Mikhail Vorotyntsev
Pro Se