Mikhail Vorotyntsev, Pro Se
Elena Vorotyntseva, Pro Se
511 Avenue of the Americas, Suite 372
New York, NY 10011
pacer@shoplink.me

April 10, 2026

**VIA ECF**

The Honorable Gregory H. Woods
United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 12C
New York, NY 10007

      **Re:** *Khmaladze et al. v. Vorotyntsev et al.*, No. 16-cv-8029 (GHW) (S.D.N.Y.)
          Response to Plaintiffs' Letter of April 9, 2026 (ECF 407)

Dear Judge Woods:

We write jointly in response to the letter filed by Mr. Chattoraj on April 9, 2026 (ECF 407), opposing ShopLink Inc.'s assignment of counterclaims and seeking dismissal. We address each of Mr. Chattoraj's arguments in turn and, because his letter places ShopLink's ownership structure in issue, we take this opportunity to place on the record—under penalty of perjury—a complete and definitive statement of the corporate, equity, and digital asset ownership structure relevant to this action and all related proceedings. The accompanying Joint Verified Declaration (**Exhibit B**) is submitted separately and is intended to serve as the authoritative record of these matters in this Court and in all parallel forums.

As a preliminary matter, this Court entered final judgment in the consolidated action on March 31, 2026 (Dkt. 655 in No. 16-cv-7203), in Mr. Vorotyntsev's favor on *all five* of Tatintsian's claims. The securities fraud claim—the foundation upon which nine years of litigation

rested—was dismissed with prejudice. The counterclaims at issue in this action are the only surviving substantive claims between these parties, and they arise from conduct this Court itself found meritorious at summary judgment (Dkt. 285 at 35–39, 44).

## I. THE CLAIM ASSIGNMENT IS A VALID EXERCISE OF SHAREHOLDER AUTHORITY

As a threshold matter, Mr. Vorotyntsev is the sole beneficial owner of ShopLink Inc. The assignment of ShopLink's claims to its sole shareholder is a valid exercise of corporate authority under Delaware law. *See Bokat v. Getty Oil Co.*, 262 A.2d 246, 249–50 (Del. 1970). No federal court has the authority to nullify a valid corporate act merely because the assignee is pro se. The corporate-counsel rule requires that a *corporation* appear through counsel; once claims are validly assigned, the assignee prosecutes them in his own name as an individual—not on behalf of the corporation. Mr. Vorotyntsev's right to prosecute these claims derives from the assignment, not from any purported authority to represent ShopLink.

Mr. Chattoraj characterizes the assignment as a "tactic" designed to "evade" the corporate-counsel requirement. The record compels a different conclusion. The assignment was compelled by the systematic neutralization of every attorney who represented the corporate entities in this litigation—a pattern that is itself a predicate act in the now-pending RICO Action. The claim assignment should have been executed years ago but for the self-interested advice of successive counsel—each of whom identified the corporate-counsel requirement as a problem and offered himself as the solution, while concealing that the identical mechanism was available and was being deployed by the same actors in parallel proceedings. *Specifically:* Michael Goldman of Lydecker, who represented ShopLink's interests in this action, resigned from that representation upon Mr. Vorotyntsev's confronting him with the Isaev–Tatintsian connection on

June 16, 2025. Goldman withdrew in twenty-seven minutes, stating that the email "creates a conflict as you're accusing my other client." Goldman had simultaneously represented Isaev's Pelican Ventures in its claim assignment to Leramont LLC in *Leramont LLC v. Gary Tatintsian Gallery, Inc.*, No. 1:20-cv-02435 (S.D.N.Y.)—executing the identical mechanism he concealed from ShopLink. Goldman possessed the knowledge that corporate claims could be assigned to individuals for prosecution; he deployed that knowledge exclusively for the adversary while planning to bill ShopLink for representation in which he had an undisclosed conflict.

The undisputed record of attorney neutralization: (1) Seibert withdrew under "irreconcilable conflict" approximately six weeks after extracting Tatintsian's deposition confessions and placing Santillo on notice of perjury (November 20, 2020); (2) Snyder was terminated on September 11, 2025, after conduct now alleged as RICO predicate acts; (3) Thomas withdrew on March 30, 2026 (ECF 403); (4) Goldman resigned from ShopLink's representation in twenty-seven minutes as described above; (5–6) at least two additional prior counsel departed under circumstances consistent with the same pattern of obstruction, conflict creation, and financial strangulation. The Supplemental Claim Assignment was executed on April 1, 2026—the first moment Mr. Vorotyntsev understood the mechanism was available—and not one day later.

The sham character of the underlying litigation is not a matter of conjecture. Tatintsian himself judicially admitted it—confessing under oath to a "mission" to destroy Mr. Vorotyntsev, to contacting every ShopLink investor with false statements, and to possessing "zero knowledge" of the business he claimed to own (November 19–20, 2020 deposition). Mr. Khmaladze's own counsel, Mr. Chattoraj, communicated a settlement offer on or about May 2019 in which Mr. Khmaladze offered to abandon all challenges to the validity of the underlying contracts—an offer

that would make no sense unless the challenges were known to be baseless. And the filing of *GT v. Pryor Cashman* (NYSSC 152022/2017) constituted a judicial admission by Mr. Chattoraj's own client that the federal fraud claims were meritless, because Tatintsian sued the very law firm he had contractually undertaken to pay for the legal services Pryor Cashman rendered in connection with his scheme to encroach upon ShopLink—and then breached that agreement—thereby judicially admitting that the federal fraud claims were brought as an instrumentality of the enterprise, not as legitimate litigation.

The cases upon which Mr. Chattoraj relies—*Jones v. Niagara Frontier Transportation Authority*, 722 F.2d 20 (2d Cir. 1983); *Kumaran v. Nat'l Futures Ass'n*, 604 F. Supp. 3d 82 (S.D.N.Y. 2022)—involve litigants who had available but unused avenues to retain counsel and chose assignment as a convenience. Here, the inability to retain counsel was *caused by the opposing party's own conduct*—conduct this Court itself documented when it found evidence of "an abuse of a fiduciary or confidential relationship" (Dkt. 285 at 39). Moreover, the law-of-the-case doctrine cited by Mr. Chattoraj does not apply where, as here, there has been a material change in circumstances: namely, the discovery of the assignment mechanism through Goldman's concealment, which was not known to Mr. Vorotyntsev at the time of any prior order. *See Link v. Wabash R.R.*, 370 U.S. 626, 633–34 (1962); *Martens v. Thomann*, 273 F.3d 159, 180–81 (2d Cir. 2001).

## II. THE SHAREHOLDER AND OWNERSHIP ISSUES ARE DEFINITIVELY RESOLVED

Mr. Chattoraj's letter raises four shareholder-related objections. Each is resolved by the accompanying Joint Verified Declaration (**Exhibit B**), which is sworn under penalty of perjury by both Mr. Vorotyntsev and Ms. Vorotyntseva.

**A. Counter Capital LLC**

Counter Capital LLC is a holding company whose sole members are Mikhail Vorotyntsev and Elena Vorotyntseva, holding equal membership interests. Counter Capital is the majority shareholder of ShopLink Inc. There is no contradiction between the Rule 7.1 Statement (ECF 21), which disclosed Counter Capital as the majority shareholder, and Mr. Vorotyntsev's sworn statement that he is the "sole shareholder" (ECF 405-1    1): Mr. Vorotyntsev is the sole beneficial owner of ShopLink through his controlling interest in Counter Capital, and Ms. Vorotyntseva is the beneficial co-owner by virtue of her equal membership interest. The full ownership structure, including the equity loan and survivorship provisions, is set forth in the Joint Verified Declaration at ¶¶ 1–3.

**B. Tatintsian's Forfeited Shares**

Mr. Chattoraj cites Mr. Vorotyntsev's December 15, 2016 declaration (ECF 83 in No. 16-cv-7203) referencing Tatintsian's 440,000 shares. That declaration described the state of affairs in 2016—the very shareholding that formed the basis of the securities fraud claim Tatintsian brought and *lost*. Tatintsian's shares were forfeited by operation of the ShopLink Stockholders' Agreement upon his material breach of fiduciary duty. The breaches are judicially admitted: Tatintsian confessed under oath to a "mission" to destroy Mr. Vorotyntsev, to contacting every ShopLink investor with false statements, and to demonstrating "zero knowledge" of the business (November 19–20, 2020 deposition). The securities fraud claim—the sole legal basis upon which any party could assert Tatintsian's continuing ownership—was dismissed with prejudice on March 31, 2026 (Dkt. 655). No party with standing disputes this forfeiture. *See* Joint Verified Declaration at ¶¶ 10–14.

**C. ShopLink's Investors Hold Promissory Notes, Not Equity**

To the extent Mr. Chattoraj's arguments imply that other investors hold equity interests in ShopLink, that implication is incorrect. ShopLink's investors hold promissory notes—not equity. These investors executed affidavits in support of Mr. Vorotyntsev in 2016 and 2017, which were presented to the New York Attorney General and contributed to the termination of the NYAG investigation that Mr. Chattoraj himself instigated. No promissory note holder has any ownership interest, voting right, or standing to challenge this assignment.

**D. Section 1654 and the Joint Assignment**

Mr. Chattoraj correctly observes that Mr. Vorotyntsev cannot represent Ms. Vorotyntseva under 28 U.S.C. § 1654. The Supplemental Claim Assignment is to Mr. Vorotyntsev and Ms. Vorotyntseva "jointly and severally," which permits either assignee to prosecute independently. Mr. Vorotyntsev prosecutes these counterclaims in his individual capacity as assignee. Ms. Vorotyntseva's interests are independently protected as a named plaintiff in *Vorotyntsev v. Tatintsian et al.*, No. 1:26-cv-02148-LTS (S.D.N.Y.). Ms. Vorotyntseva joins this letter to verify the ownership and equity structure, not to appear as a party prosecuting the counterclaims.

**E. IT Adapter LLC and AUM Code LLC**

Mr. Chattoraj notes that Mr. Vorotyntsev has not yet caused IT Adapter LLC and AUM Code LLC to assign their counterclaims. Mr. Vorotyntsev is the sole member and sole manager of both entities. Like ShopLink, both were voided by the State of Delaware for non-payment of franchise taxes—for the same reason: the enterprise's financial strangulation. Mr. Vorotyntsev is initiating the Delaware reinstatement process for both entities and will execute supplemental claim assignments from each upon completion. Mr. Vorotyntsev does not consent to dismissal of IT Adapter's or AUM Code's counterclaims.

**III. DELAWARE REVIVAL IS IN PROGRESS FOR ALL ENTITIES**

On April 7, 2026, Mr. Vorotyntsev paid the $389.00 Delaware Business Reinstatement Filing fee for ShopLink Inc. (receipt attached as **Exhibit A**). The reinstatement is being processed by the Delaware Division of Corporations. Mr. Vorotyntsev is simultaneously initiating reinstatement for Counter Capital LLC, IT Adapter LLC, and AUM Code LLC.

Under 8 Del. C. § 312, revival retroactively validates all corporate acts taken during the void period. *Frederic G. Krapf & Son, Inc. v. Gorson*, 243 A.2d 713, 715 (Del. 1968). The Board Resolution authorizing the Supplemental Claim Assignment (ECF 405-3) expressly cites this authority. The identical Board Resolution is docketed in the RICO Action as Dkt. 13-1 in No. 1:26-cv-02148-LTS (filed April 9, 2026).

**Mr. Vorotyntsev respectfully requests that the Court extend the April 12, 2026 deadline by twenty-one (21) days—to May 3, 2026—to permit the Delaware Division of Corporations to process the reinstatement filings for all entities.** This extension will moot Mr. Chattoraj's voided-charter argument entirely, as the revivals will retroactively validate the assignments *nunc pro tunc* as of April 1, 2026. The July 13, 2026 trial date provides ample time to resolve the substitution issue. No prejudice to Plaintiffs will result.

### IV. THE LESANE FACTORS FAVOR PRESERVATION

**Duration.** This case has been pending for nearly a decade, but the duration is attributable to the opposing parties' litigation—not the corporate defendants' failure to prosecute. Mr. Vorotyntsev prevailed on all five of Tatintsian's claims (Dkt. 655).

**Notice.** Mr. Vorotyntsev responded to every counsel order by retaining new counsel. Each successive attorney was then driven from representation by conduct attributable to the enterprise now alleged in the RICO Action. The pattern is compliance followed by externally caused failure.

**Prejudice.** This Court denied summary judgment on four ShopLink counterclaims (Dkt. 285 at 35–39, 44), finding evidence of "an abuse of a fiduciary or confidential relationship" (id. at 39). Dismissal would extinguish claims this Court found meritorious. The greater prejudice falls on the party whose substantive rights would be eliminated by a procedural default the opposing party engineered.

**Calendar congestion.** Trial is set for July 13, 2026. Plaintiffs' affirmative claims proceed regardless. Dismissal eliminates only the corporate defendants' counterclaims—producing an asymmetry that serves no judicial economy interest.

**Efficacy of lesser sanctions.** Each time the Court warned, Mr. Vorotyntsev complied by retaining counsel. Each attorney then departed. Dismissal is the ultimate sanction and is disproportionate where the failure was caused by the adversary's own conduct—conduct that is itself a predicate act in the pending RICO Action.

## V. MR. CHATTORAJ'S PERSONAL INTEREST IN THIS MOTION

The Court should be aware that on April 9, 2026—the same day Mr. Chattoraj filed ECF 407—a First Amended Verified Complaint was docketed in *Vorotyntsev v. Tatintsian et al.*, No. 1:26-cv-02148-LTS (S.D.N.Y.), before Chief Judge Laura Taylor Swain. *See* Dkt. 13 (44 pages, 21 defendants).

Mr. Chattoraj is a named defendant. The complaint alleges under 18 U.S.C. §§ 1962(c) and (d) that Mr. Chattoraj participated in a racketeering enterprise's affairs through: (a) the filing of a perjured Rule 56.1 Statement § 69, asserting "no evidence" of IP misappropriation while the relevant USPTO patent assignment sat in the record; (b) the instigation of a New York Attorney General investigation against Mr. Vorotyntsev based on false information supplied to law enforcement—an investigation that collapsed when Mr. Vorotyntsev's replacement counsel

submitted ShopLink investor affidavits directly to the NYAG, which prior counsel had refused to provide despite possessing them; (c) the coordinated violation of this Court's January 7, 2020 email service order, which manufactured the default that led to the six-year Bitcoin freeze; and (d) the filing of *GT v. Pryor Cashman* (NYSSC 152022/2017), a judicial admission that the federal fraud claims were baseless.

Mr. Chattoraj's interest in the dismissal of these counterclaims is therefore not merely adversarial—it is personal. The counterclaims, if tried, will produce a factual record that directly supports the RICO allegations against him. His characterization of Mr. Vorotyntsev's filings as "bizarre accusations and feuds" (ECF 407 at 3) should be evaluated in light of this interest.

A copy of the First Amended Verified Complaint (Dkt. 13 in No. 1:26-cv-02148-LTS) is available on PACER. Mr. Vorotyntsev respectfully defers to the Court's preference as to whether it should be submitted as an exhibit.

## VI. REQUEST FOR JUDICIAL NOTICE AND SERVICE NOTIFICATION

Mr. Vorotyntsev respectfully requests that the Court take judicial notice, pursuant to Federal Rule of Evidence 201(b)(2), of Dkt. 13 and Dkt. 13-1 in No. 1:26-cv-02148-LTS (S.D.N.Y.), filed April 9, 2026. These are public judicial records whose accuracy cannot reasonably be questioned. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

Mr. Vorotyntsev further respectfully requests that the Court direct that this response letter—which identifies the RICO Action and the status of Mr. Chattoraj and Dmitriy Khmaladze as named defendants therein—serve as formal notice to those parties via ECF. This request is made in the interest of judicial economy. Service obligations under FRCP 4 in No. 1:26-cv-02148-LTS will be independently satisfied; this request pertains solely to notification through this Court's ECF system as a matter of record.

## VII. REQUESTED RELIEF

Mr. Vorotyntsev and Ms. Vorotyntseva respectfully request that this Court:

(a) Grant the Rule 25(c) motion for substitution, permitting Mr. Vorotyntsev to prosecute ShopLink's four surviving counterclaims, and IT Adapter's and AUM Code's remaining counterclaims, as assignee;

(b) Extend the April 12, 2026 deadline by twenty-one (21) days, to May 3, 2026, to permit completion of pending Delaware reinstatement filings for ShopLink Inc., Counter Capital LLC, IT Adapter LLC, and AUM Code LLC, and permit filing of supplemental claim assignments upon revival, all to be validated *nunc pro tunc* under 8 Del. C. § 312;

(c) Take judicial notice of Dkt. 13 and Dkt. 13-1 in No. 1:26-cv-02148-LTS and direct that ECF service of this response constitutes formal notice to Mr. Chattoraj and Dmitriy Khmaladze of their status as named RICO defendants;

(d) Accept for filing the Joint Verified Declaration (**Exhibit B**) as the definitive record of the corporate, equity, digital asset, and survivorship structure for use in this action and all related proceedings;

(e) Should the Court reach a different conclusion on substitution, Mr. Vorotyntsev preserves the following alternative positions: (i) stay any dismissal pending completion of Delaware reinstatements and a reasonable period to retain counsel; (ii) dismiss *without prejudice* to refiling upon revival; and (iii) in any event, enter an order expressly providing that any dismissal does not vacate Zubchevich's seven-year default or the judicial admissions flowing therefrom, which remain available in No. 1:26-cv-02148-LTS, the Second Circuit mandamus proceeding (Dkt. 638), UK High Court proceedings (CL-2026-000135), and all other forums;

(f) Grant such other and further relief as this Court deems just and proper.

**PRESERVATION OF RIGHTS.** Mr. Vorotyntsev and Ms. Vorotyntseva expressly preserve all rights under 28 U.S.C. §§ 1291, 1292(b), and 1651; Fed. R. Civ. P. 25(c), 46, 59, and 60; 18 U.S.C. § 1964; and all objections stated in ECF 404, 405, and 406. Ms. Vorotyntseva preserves all rights as plaintiff in No. 1:26-cv-02148-LTS and claimant in CL-2026-000135 (England and Wales).

Respectfully submitted,

/s/ Mikhail Vorotyntsev

_____

Mikhail Vorotyntsev, Pro Se
Individually and as Assignee of ShopLink Inc.,
IT Adapter LLC, and AUM Code LLC
511 Avenue of the Americas, Suite 372
New York, NY 10011 | pacer@shoplink.me

/s/ Elena Vorotyntseva

_____

Elena Vorotyntseva, Pro Se
Co-Beneficial Owner, Counter Capital LLC
Plaintiff, No. 1:26-cv-02148-LTS (S.D.N.Y.)
Claimant, CL-2026-000135 (England & Wales)

cc: Partha P. Chattoraj, Esq. (via ECF)

**Attachments:**
Exhibit A — ShopLink Inc. Delaware Business Reinstatement Invoice (April 7, 2026)
Exhibit B — Joint Verified Declaration (filed separately as standalone docket entry)

## CERTIFICATE OF SERVICE

We hereby certify that on April 10, 2026, a true and correct copy of the foregoing was filed via CM/ECF, which will serve all counsel of record electronically.

/s/ Mikhail Vorotyntsev            /s/ Elena Vorotyntseva

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DMITRIY KHMALADZE, et al.,
          Plaintiffs-Counterclaim Defendants,
  v.                    No. 16-cv-8029 (GHW)
MIKHAIL VOROTYNTSEV, et al.,
          Defendants-Counterclaim Plaintiffs.

**EXHIBIT B**

**JOINT VERIFIED DECLARATION OF MIKHAIL VOROTYNTSEV AND ELENA**

**VOROTYNTSEVA**

*Re: Corporate, Equity, Digital Asset, and Survivorship Structure*

We, Mikhail Vorotyntsev ("MV") and Elena Vorotyntseva ("EV"), pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct:

**A. Counter Capital LLC**

1. Counter Capital LLC ("Counter Capital" or "CC") is a limited liability company formed under the laws of the State of Delaware. Its sole members are MV and EV, each holding a fifty percent (50%) membership interest.

2. MV is the Managing Member of Counter Capital and has sole authority over its day-to-day operations, investment decisions, and the exercise of its voting rights in all portfolio entities, including ShopLink Inc.

3. Counter Capital's charter was voided by the State of Delaware for non-payment of franchise taxes, caused by the enterprise's financial strangulation. MV is in the process of filing reinstatement applications for Counter Capital. Upon revival, all corporate acts during the void period will be retroactively validated under 8 Del. C. § 312.

**B. ShopLink Inc.**

4. ShopLink Inc. ("ShopLink") is a corporation incorporated under the laws of the State of Delaware. Counter Capital LLC is the majority shareholder. MV is the sole director and Chief Executive Officer.

5. ShopLink's charter was voided for non-payment of franchise taxes. On April 7, 2026, MV paid the $389.00 reinstatement filing fee. Upon revival, all corporate acts during the void period—including the Supplemental Claim Assignment executed on April 1, 2026—will be retroactively validated under 8 Del. C. § 312.

6. ShopLink's investors hold promissory notes, not equity. These investors executed affidavits in support of MV in 2016 and 2017, which were presented to the New York Attorney General and contributed to the termination of the NYAG investigation. No promissory note holder has any ownership interest, voting right, or standing to challenge the Supplemental Claim Assignment.

**C. IT Adapter LLC and AUM Code LLC**

7. IT Adapter LLC is a limited liability company formed under the laws of Delaware. MV is its sole member and manager.

8. AUM Code LLC is a limited liability company formed under the laws of Delaware. MV is its sole member and manager.

9. Both entities were voided for non-payment of franchise taxes. MV is in the process of filing reinstatement applications for both entities, and upon revival will execute supplemental claim assignments to himself, which will be filed with this Court.

**D. Forfeiture of Tatintsian's Shares**

10. Gary Tatintsian ("GT") held 440,000 shares of ShopLink common stock as reflected in MV's Declaration of December 15, 2016 (ECF 83 in No. 16-cv-7203).

11. GT's shares were subject to the ShopLink Stockholders' Agreement, which imposed restrictions on transfer and provided for forfeiture upon material breach of fiduciary duty.

12. GT materially breached his fiduciary duties, as judicially established by his deposition testimony of November 19–20, 2020, in which he confessed under oath to: (a) pursuing a "mission" to destroy MV; (b) contacting every ShopLink investor with false statements; and (c) demonstrating "zero knowledge" of ShopLink's business and operations.

13. GT's 440,000 shares were automatically forfeited under the Stockholders' Agreement. GT's securities fraud claim was dismissed with prejudice on March 31, 2026 (Dkt. 655). GT is not and has not been a shareholder of ShopLink since the date of forfeiture.

14. Following GT's forfeiture, MV, through Counter Capital LLC, is the sole beneficial owner of ShopLink Inc.

**E. Elena Vorotyntseva's Beneficial Ownership of Bitcoin and the Equity Loan Agreement**

15. EV is the beneficial owner of approximately 140.24 Bitcoin ("BTC"), frozen by Nexo Capital Inc. (and/or its affiliates Nexo AG and Nexo Financial LLC) since on or about March 27, 2020—a period exceeding six (6) years.

16. This Bitcoin was deposited with Nexo pursuant to a credit facility governed by Nexo's Wallet Services Terms and Conditions and Crypto Credit Terms and Conditions, which provide for English law and the jurisdiction of the courts of England and Wales.

17. At current market prices, the frozen Bitcoin has a value of approximately $11,800,000. At its peak value on or about October 6, 2025, the value was approximately $17,670,240.

18. The Bitcoin is held by EV pursuant to an equity loan agreement (the "Equity Loan Agreement") between EV, MV, and their affiliated entities, including Counter Capital LLC and Humanity Capital. Under the Equity Loan Agreement:

(a) EV pledged her fifty percent (50%) membership interest in Counter Capital LLC to MV and/or Humanity Capital, as and when designated by MV, in exchange for beneficial ownership of the Bitcoin held in the Nexo accounts;

(b) MV retains the right to designate additional equity interests, digital assets, or other property for assignment to EV under the Equity Loan Agreement, at MV's sole discretion;

(c) The Equity Loan Agreement is irrevocable except by mutual written consent of both MV and EV.

## F. Reciprocal Survivorship Provisions

19. The Equity Loan Agreement contains the following reciprocal survivorship provisions, which operate automatically:

(a) In the event of EV's death, incapacity, or inability to manage her affairs: all Bitcoin beneficially owned by EV shall revert to MV, and EV's membership interest in Counter Capital shall vest fully in MV;

(b) In the event of MV's death, incapacity, or inability to manage his affairs: (i) EV's pledged membership interest in Counter Capital shall be released to EV in full; (ii) Counter Capital—and through it, ShopLink, IT Adapter, AUM Code, and all portfolio entities—shall become wholly owned by EV; and (iii) all Bitcoin shall remain the sole property of EV;

(c) These provisions ensure that at all times, the combined beneficial interests of MV and EV are held within the family unit and cannot pass to any third party without the surviving party's consent.

## G. Absence of Third-Party Interests

20. Other than the interests described herein, no person or entity holds any ownership, equity, membership, stock, option, warrant, lien, encumbrance, security interest, or other beneficial interest of any kind in Counter Capital LLC, ShopLink Inc., IT Adapter LLC, AUM Code LLC, or the approximately 140.24 BTC—except as may be claimed by Nexo by virtue of the disputed freeze, which is the subject of the RICO Action (No. 1:26-cv-02148-LTS) and UK proceedings (CL-2026-000135).

21. Tatintsian does not hold any shares or beneficial interests of any kind in any entity described herein, for the reasons set forth in paragraphs 10–14 above.

## H. Purpose and Intended Use

22. This Declaration is intended to serve as the definitive and binding record of the matters described herein in the following proceedings:

(a) No. 1:16-cv-08029-GHW (S.D.N.Y.);

(b) No. 1:16-cv-07203-GHW (S.D.N.Y.);

(c) No. 1:26-cv-02148-LTS (S.D.N.Y.) (the "RICO Action");

(d) Any appeal or mandamus before the Second Circuit;

(e) *Vorotyntseva v. Nexo Capital Inc. et al.*, CL-2026-000135 (England and Wales, Chancery Division);

(f) Index No. 651838/2026 (N.Y. Sup. Ct.);

(g) Any other proceeding arising from these facts and circumstances.

23. We understand that this Declaration is made under penalty of perjury under 28 U.S.C. § 1746, and that any false statement may subject us to criminal prosecution under 18 U.S.C. § 1621.

We declare under penalty of perjury that the foregoing is true and correct.

Executed on April 10, 2026, in New York, New York.


_____

MIKHAIL VOROTYNTSEV
Sole Director and CEO, ShopLink Inc.
Sole Member and Manager, IT Adapter LLC and AUM Code LLC
Managing Member, Counter Capital LLC


_____

ELENA VOROTYNTSEVA
Member, Counter Capital LLC
Beneficial Owner, approximately 140.24 BTC
Plaintiff, No. 1:26-cv-02148-LTS (S.D.N.Y.)
Claimant, CL-2026-000135 (England & Wales)


**<u>NOTARIZATION</u>**


STATE OF NEW YORK
COUNTY OF NEW YORK

Subscribed and sworn to before me this ___ day of April, 2026.



_____
Notary Public, State of New York
My Commission Expires: _____