USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/24/2026

UNITED STATES DISTRICT COURT.
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                          :

DMITRIY KHMALADZE, *et al.*,            :
                                            :

                      Plaintiffs,     :              1:16-cv-8029-GHW
                                            :

              -v –                    :     MEMORANDUM OPINION &
                                            :                ORDER

MIKHAIL VOROTYNTSEV, *et al.*,    :
                Defendants.   :

                                            :
-------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

This case began nearly ten years ago.  Plaintiffs Dmitriy Khmaladze and ITAdapter Corporation, Inc. filed a complaint against AUM Code LLC, IT Adapter LLC, Shoplink Inc. (collectively, the "Corporate Entities"), and the Corporate Entities' principal, Mikhail Vorotyntsev, alleging claims arising out of a commercial dispute between Mr. Vorotyntsev and Mr. Khmaladze. Soon after, the Corporate Entities answered and asserted counterclaims.

In August 2024, the Court ruled on Plaintiffs' motion for summary judgment.  Thereafter, the only claims that remained in the case were the Corporate Defendants' counterclaims for conspiracy to commit unfair competition, unjust enrichment, promissory estoppel, and breach of fiduciary duty.  The Court twice scheduled a trial on those counterclaims.  Trial is currently scheduled to begin on July 13, 2026.

Several times in the last ten years, the Corporate Entities have found themselves without counsel.  All of the lawyers who have represented them across the years have moved to withdraw, citing nonpayment and irreconcilable breakdowns in their relationship with Mr. Vorotyntsev.

On March 30, 2026, Mr. William A. Thomas became the latest attorney for whom the Court granted leave to withdraw.  In the order granting his motion, the Court ordered the Corporate Entities to show cause why their counterclaims should not be dismissed for failure to prosecute

under Federal Rule of Civil Procedure 41(b).  Mr. Vorotyntsev responded on behalf of the

Corporate Entities.  In that response, he moved to substitute himself for the Corporate Entities

under Federal Rule of Civil Procedure 25.  Because substitution would not be appropriate given the

lengthy history of this case and the Court's observations of Mr. Vorotyntsev's conduct, the Court

denies the motion for substitution.  Because all of the factors the Second Circuit considers in

determining whether to dismiss an action for failure to prosecute favor dismissal, the Court finds

that it is an appropriate exercise of its discretion to dismiss the Corporate Entities' counterclaims

without prejudice.

## I.    BACKGROUND

This case has a long procedural history that speaks for itself.  The Court reviews the history

relevant to the Corporate Entities' counterclaims and the motion to substitute and directs the reader

to the docket of this case for a full review of the history and facts.

### A.    The Corporate Entities' Counterclaims

On October 13, 2026, Plaintiffs initiated this action against Mr. Vorotyntsev and the

Corporate Entities.  Dkt. No. 1 ("Compl").  Plaintiffs' claims principally concerned several

purported agreements between the parties:  (1) a non-disclosure agreement entered into by Mr.

Vorotyntsev, Shoplink, and Mr. Khmaladze (the "NDA"), *id.* ¶ 24; (2) an asset purchase agreement

entered into by Plaintiffs, AUM Code LLC, and Mr. Vorotyntsev (the "APA"), *id.* ¶ 31; and (3)

purported agreements to assign certain intellectual property (the "Intellectual Property

Assignments"), *id.* ¶ 35.  Plaintiffs asserted seven causes of action:  (1) recission of the APA based

on fraudulent inducement; (2) recission of the APA based on the absence of consideration; (3)

recission of the NDA based on fraudulent inducement; (4) recission the Intellectual Property

Assignments based on fraudulent inducement; (5) declaratory judgment of material breach of the

APA; (6) declaratory judgment of non-enforceability of non-competition and non-solicitation

covenants of the APA; and (7) declaratory judgment for "plenary relief." *Id.* ¶¶ 47–106.

On January 27, 2017, Shoplink, proceeding through counsel, answered and asserted counterclaims against Plaintiffs. Dkt. No. 36 ("Shoplink CC"). Shoplink asserted ten causes of action: (1) breach of contract as it related to Khmaladze's purported employment contract with Shoplink; (2) breach of fiduciary duty; (3) unfair competition; (4) conversion; (5) promissory estoppel; (6) unjust enrichment; (7) tortious interference with prospective business relations; (8) declaratory judgment as the NDA; (9) breach of contract as to the NDA; and (10) declaratory judgment as to Shoplink's purported rights to certain software. *Id.* ¶¶ 119–92.

On January 27, 2017, Defendants AUM Code LLC and IT Adapter LLC, proceeding through counsel, answered and asserted counterclaims against Plaintiffs. Dkt. No. 37 ("AUM/ITA CC"). AUM Code LLC asserted six causes of action: (1) breach of contract for failures to develop certain software; (2) breach of fiduciary duty; (3) conversion; (4) promissory estoppel; (5) declaratory judgment as to purported rights to certain software; and (6) breach of contract for provisions of the non-compete covenant in the APA. *Id.* ¶¶ 119–69. IT Adapter LLC joined AUM Code in asserting the second through fifth causes of action. *See id.* ¶¶ 128–61.

On February 3, 2017, Mr. Vorotyntsev answered and asserted a counterclaim against Plaintiffs. Dkt. No. 38 ("Vorotyntsev CC"). He asserted a breach of fiduciary duty claim against both Plaintiffs. *Id.* ¶¶ 82–86.

On April 18, 2019, the Court granted Plaintiff's motion to dismiss Mr. Vorotyntsev's counterclaim. Dkt. No. 69. Thereafter, the only claims by Defendants remaining in this case were the Corporate Entities' counterclaims. *Id.*

On April 22, 2022, Plaintiffs moved for summary judgment on their second, fifth, and sixth claims for relief and on all of the Corporate Entities' counterclaims. Dkt. No. 262.

On August 6, 2024, the Court granted Plaintiffs summary judgment on their second, fifth,

3

and sixth claims for relief.  Dkt. No. 285 ("SJ Op.").  The Court also granted Plaintiffs summary

judgment on the Corporate Entities' counterclaims for breach of contract, breach of the Asset

Purchase Agreement, breach of the NDA, conversion, conspiracy to commit tortious interference,

and the counterclaims for declaratory judgment.  *Id.* at 43–44.  The Court denied summary judgment

on the Corporate Entities' counterclaims for conspiracy to commit unfair competition, unjust

enrichment, promissory estoppel, and breach of fiduciary duty.  *Id.* at 44.

On October 17, 2024, the Court scheduled a jury trial on the remaining counterclaims to

begin on September 8, 2025.  Dkt. No. 308.  On July 9, 2025, the Court adjourned the trial *sine die.*

Dkt. No. 356.  On October 27, 2025, the Court scheduled the trial to begin on July 13, 2026.  Dkt.

No. 378.

### B.        The Motions to Withdraw

On multiple occasions, counsel for the Corporate Entities and counsel for Mr. Vorotyntsev

have withdrawn from this case.  All Defendants were represented by attorneys soon after Plaintiffs

initiated this action.  On November 14, 2016, Justin M. Sher and Erica A. Wolff entered notices of

appearance on behalf of Mr. Vorotyntsev.  Dkt. Nos. 12–13.  In late 2016, David A. Pohl also

entered notices of appearance on behalf the Corporate Entities.  Dkt. Nos. 9, 25.

On June 2, 2017, Justin M. Sher and Erica A. Wolff moved to withdraw.  *See* Dkt. No. 61.

In their memorandum of law in support of their motion, the attorneys cited Mr. Vorotyntsev's

nonpayment of their fees as good cause for their motion.  *Id.* at 2.  On June 9, 2017, the Court

granted that motion and stayed the case until July 7, 2017 to permit the defendants to retain counsel.

Dkt. No. 66.

On July 20, 2017, Frank J. Franzino entered a notice of appearance on behalf of Mr.

Vorotyntsev.  Dkt. No. 68.  On November 15, 2019, Mr. Franzino moved to withdraw.  Dkt. No.

100.  In his memorandum of law in support, he cited Mr. Vorotyntsev's repeated failures to pay

agreed-upon fees and Mr. Vorotyntsev's failures to cooperate with his counsel. *Id.* In particular, Mr. Franzino cited Mr. Vorotyntsev's failure to "meaningful participate in discovery-related matters that are essential to preparation of [his] claims and defenses and in furtherance of [his] discovery obligations." *Id.* at 6.

On November 15, 2019, Mr. Pohl moved to withdraw as counsel for the Corporate Entities. Dkt. No. 96. In his memorandum of law in support, he cited Mr. Vorotyntsev's failure to cooperate with counsel. *Id.* at 4. He affirmed that Mr. Vorotyntsev had failed to "meaningfully particulate" in "discovery-related matters," had failed to "communicate appropriately with . . . counsel," had "insisted upon taking action with which [counsel] ha[d] a fundamental disagreement, " and that there "ha[d] been a breakdown in trust between [counsel] and Vorotyntsev." *Id.* at 4–5.

On November 25, 2019, the Court granted Mr. Franzino and Mr. Pohl's motions to withdraw. Dkt. No. 103. The Court emphasized the requirement that the Corporate Entities may only appear through counsel as follows:

> As the Court explained during the conference, corporate entities—such as Aum Code LLC, IT Adapter LLC, and ShopLink Inc.—*must* appear before the Court through counsel. *See Rowland v. California Men's Colony*, 506 U.S. 194, 201–02 (1993). In other words, Aum Code LLC, IT Adapter LLC, and ShopLink Inc. must retain an attorney should they wish to appear in this action. Replacement counsel for Aum Code LLC, IT Adapter LLC, and ShopLink Inc. must enter a notice of appearance in this case by no later than January 6, 2020. If no attorney enters an appearance on behalf of Aum Code LLC, IT Adapter LLC, and ShopLink Inc. by that date, the Court may enter a default against those entities. *See Sec. & Exch. Comm'n v. Research Automation Corp.*, 521 F.2d 585, 589 (2d Cir. 1975) ("It is settled law that a corporation may not appear in a lawsuit against it except through an attorney, and that, where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55[.]"); *see also, e.g., City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129, 130 (2d Cir. 2011). If the Court enters a default against Aum Code LLC, IT Adapter LLC, and ShopLink Inc., plaintiffs may seek a default judgment from the Court under Federal Rule of Civil Procedure 55(b).

*Id.* at 2 (emphasis in original). Recognizing the upcoming holidays, the Court stayed the action through January 6, 2020 to allow the Corporate Entities to retain counsel. *Id.* The Court—granting in part Mr. Vorotyntsev's request for a one month extension—extended that deadline to January 24,

2020.  Dkt. No. 105.

On February 3, 2020, the Court found the Corporate Entities in default because no attorney had entered a notice of appearance on their behalf.  Dkt. No. 106.  On February 6, 2020, the Clerk of Court entered a certificate of default.  Dkt. No 108.  The Court ordered the Corporate Entities to show cause why their counterclaims should not be dismissed.  Dkt. No. 116.

On February 27, 2020, Mr. William A. Thomas entered a notice of appearance on the Corporate Entities' behalf.  Dkt. No. 120.  Following briefing on the Corporate Entities' motion to vacate the default and their payment of Plaintiffs' fees, the Court vacated the default on June 26, 2020.  Dkt. No. 155.

On November 17, 2020, the Court granted the Corporate Entities' motion to substitute Mr. Thomas for Jason Seibert.  Dkt. No. 174.  On December 15, 2020, Jeffrey Kevin Davis also entered a notice of appearance on behalf of the Corporate Entities.  Dkt. No. 179.  On January 20, 2021, Mr. Davis moved to withdraw.  Dkt. No. 308, 1:16-cv-7203.  Mr. Davis identified a conflict of interest that barred his representation.  *Id.* ¶ 4.  He also affirmed that there "exist[ed] a substantial conflict in strategy between [him] and [his] clients in moving this case forward."  *Id.* ¶ 7.  He affirmed that his clients "refus[ed] to correspond with [him] regarding this matter and refuse[d] to respond to requests for information."  *Id.* ¶ 8.  Finally, he affirmed that his clients "refuse[d] to pay for legal fees . . . ."  *Id.* ¶ 9.  Mr. Seibert filed his motion to withdraw just over a week later.  Dkt. No. 200.

On January 29, 2021, the Court granted both Mr. Davis and Mr. Seibert's motion to withdraw.  Dkt. No. 203.  Once again, the Court stayed this case to allow the Corporate Entities to retain counsel.  *Id.*  The Court again reminded the Corporate Entities that they risked default should an attorney not file a notice of appearance.  *Id.*

In March 2021, Robert G. Leino entered notices of appearance on behalf of the Corporate

Entities.  Dkt. Nos. 209, 210.  He remained counsel of record for over four years, including through briefing on Plaintiffs' motion for summary judgment.

On April 25, 2025, Mr. Leino moved to withdraw.  *See* Dkt. No. 309.  Like many of the prior motions to withdraw, Mr. Leino's motion was premised on Mr. Vorotyntsev's failures to communicate with counsel and his failure to pay legal fees.  Dkt. No. 309-6 ¶¶ 17–32.  The Court granted his motion on May 2, 2025.  Dkt. No. 324.  Yet again, the Court reminded the parties that "if new counsel ha[d] not entered an appearance on behalf of the Corporate Defendants within thirty days of the date of [the order granting Mr. Leino's motion to withdraw], the Corporate Defendants' remaining counterclaims will be dismissed for failure to prosecute this case."  *Id.*

On June 3, 2025, the Court ordered the Corporate Entities to show cause why their counterclaims should not be dismissed for failure to prosecute.  Dkt. No. 333.

On July 7, 2025, John Hoover Snyder entered a notice of appearance on behalf of all Defendants.  Dkt. No. 354.  He also responded to the order to show cause.  Dkt. No. 355.  Mr. Snyder's tenure was brief, however, and he filed a motion to withdraw on September 25, 2025.  *See* Dkt. No. 370.  In support to of that motion, Mr. Snyder argued that a non-waivable conflict of interest existed because Mr. Vorotyntsev had levied "accusations of criminal conduct" against him.  *Id.* at 4.

On September 26, 2025, the Court granted Mr. Snyder's motion.  Dkt. No. 372.  The Court reiterated that the Corporate Entities must appear before the Court through counsel.  The Court stated that "if no attorney enters a notice of appearance on behalf of the Corporate Defendants by October 26, 2025, the Court will enter a default against those entities . . . .  The Court will also dismiss the Corporate Defendants' claims for failure to prosecute."  *Id.*  The Court also scheduled a conference to take place on October 27, 2025 to discuss the status of this case.

On the morning of that conference, Mr. Thomas once again entered a notice of appearance

on behalf of the Corporate Entities.  Dkt. No. 377.

On March 19, 2026, Mr. Thomas became the latest attorney to request leave to withdraw from this case.  Dkt. No. 394.  Like several attorneys before him, Mr. Thomas premised his motion on his clients' failure to pay legal fees and on "Mr. Vorotyntsev's extreme lack of both communication and cooperation."  *Id.* at 3.

On April 3, 2026, the Court granted Mr. Thomas's motion.  Dkt. No. 403.  The Court once again stayed this action in order for the Corporate Entities to retain counsel.  *Id.* at 9.  The Court also ordered the Corporate Entities to show cause why their claims should not be dismissed for failure to prosecute under Rule 41.  *Id.*

### C.    The Order to Show Cause and Motion to Substitute

On April 3, 2026, Mr. Vorotyntsev filed a response to the order to show cause.  Dkt. No. 405 ("Mot.").  He argued that Shoplink's counterclaims should not be dismissed because Shoplink had assigned all of its causes of action to him and his wife, Elena Vorotyntseva.[1]  He characterized his submission as a motion for substitution under Federal Rule of Civil Procedure 25(c).  *See id.*

In his motion for substitution, Mr. Vorotyntsev argued that substitution was warranted because Shoplink had assigned its claims to the Vorotyntsevs.  *See* Dkt No. 405-2 (Shoplink's Assignment of Claims).  He argued that Delaware law governed the assignment because Shoplink was organized under Delaware law.  Mot. at 2.  He argued that even though Shoplink's charter was voided "on or about December 31, 2017," the assignment would be perfected once Shoplink's charter was reinstated.  *Id.* at 3.  Mr. Vorotyntsev represented that this reinstatement was imminent. *Id.*  Mr. Vorotyntsev also argued that substitution was warranted because the voidance of Shoplink's charter was caused by a global conspiracy dedicated to his destruction that he had described in detail in other filings.  *Id.* at 4.

---

[1] Mr. Vorotyntsev did not address AUM Code LLC or IT Adapter Corporation LLC's counterclaims.

Mr. Vorotyntsev propounded several arguments in response to the order to show cause. First, he argued that his motion for substitution would allow him to prosecute Shoplink's claims. *Id.* at 4. He also argued that the Corporate Entities failure to prosecute was caused not by the Entities themselves, but by counsel's decisions to withdraw without informing Mr. Vorotyntsev—as the Entities' principal—of the possibility of substitution. He argued that counsel did not suggest substitution because "each attorney had a financial interest in" representing the Corporate Entities. Mot. at 5–7. Next, he argued that factors articulated by the Second Circuit in *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206 (2d Cir. 2001) did not favor dismissal. Mot. at 7–8. Finally, he incorporated by reference arguments in his submission bearing Mr. Thomas's signature filed in the case captioned 1:16-cv-7203 (the "Tatintsian Action"). Mot. at 8–9.

Mr. Vorotyntsev filed several exhibits alongside his response to the order to show cause and his motion for substitution. *See* Dkt. Nos. 405-1, 405-2, 405-3, 405-4, 405-5, 405-6, 405-7. On April 6, 2026, Mr. Vorotyntsev filed supplemental exhibits. Dkt. No. 406-1.

On April 9, 2026, Plaintiffs filed an opposition to the motion to substitute. Dkt. No. 407. Plaintiffs argued that Mr. Vorotyntsev's motion was an improper "circumvention of the rule" requiring corporations to appear through counsel. *Id.* at 1–2 (citing *Jones v. Niagara Frontier Trans. Authority*, 722 F.2d 20, 22–23 (2d Cir. 1983)). Plaintiffs argued that the Court should therefore decline to exercise its discretion to allow substitution. *Id.* at 2. Plaintiffs also argued that the assignment itself was problematic for several reasons, including that Mr. Vorotyntsev was not the sole shareholder of Shoplink and that any assignment could only be valid after Shoplink's charter had been revived. *Id.* at 3. In particular, Plaintiffs argued that Gary Tatintsian, the plaintiff in Tatintsian Action, retained Shoplink shares. *Id.* Finally, Plaintiffs argued that all five factors in *LeSane* favor dismissal. *Id.*

The motion for substitution and order to show cause were fully briefed when Mr. Vorotyntsev filed his reply on April 13, 2026.  Dkt. No. 408 ("Reply").  Mr. Vorotyntsev argued that the assignment of Shoplink's claim was a necessity rather than a circumvention of the rule because the withdrawal of his attorneys was orchestrated by the aforementioned global conspiracy, which has allegedly involved Plaintiffs, their counsel, and entities in multiple countries.  *Id.* at 2–4.  Next, he argued that he was the sole shareholder and that Mr. Tatintsian had "forfeited" his shares due to a "judicially admitted" breach of his fiduciary duty.  *Id.* at 4–6.  He then requested that the Court extend the deadline for the Corporate Entities to show cause to allow the Delaware Division of Corporations to "process the reinstatement for all" the Corporate Entities.  *Id.* at 7.  Finally, he reprised his argument that the factors articulated by the Circuit in *LeSane* do not favor dismissal.  *Id.* at 7–8.

## II.    LEGAL STANDARDS

### A.    Motion to Substitute

Federal Rule of Civil Procedure 25(c) provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."  Fed. R. Civ. P. 25(c).  "Rule 25(c) substitution is a procedural mechanism designed to facilitate the continuation of an action when an interest in a lawsuit is transferred and does not affect the substantive rights of the parties."  *Travelers Ins. Co. v. Broadway West Street Assocs.*, 164 F.R.D. 154, 164 (S.D.N.Y. 1995) (citing cases).

"Substitution of a successor in interest . . . under Rule 25(c) is generally within the sound discretion of the trial court."  *Organic Cow, LLC v. Ctr. For New England Dairy Compact Rsch.*, 335 F.3d 66, 71 (2d Cir. 2003) (quoting *Prop-Jets, Inc. v. Chandler*, 575 F.2d 1322, 1324 (10th Cir. 1978)); *see also Software Freedom Conservancy, Inc. v. Best Buy Co.*, Inc., No. 09-cv-10155, 2010 WL 4860780, at *2 (S.D.N.Y. Nov. 29, 2010) ("[G]ranting substitution of one party in litigation for another under Rule

25(c) is a discretionary matter for the trial court." (alteration in original) (quoting *In re Chalasani*, 92 F.3d 1300, 1312 (2d Cir. 1996)). A court may not permit substitution "in the absence of a transfer of interest." *In re Chalasani*, 92 F.3d at 1312. Therefore, "a determination that a party is, in fact, a successor-in-interest is a prerequisite to substitution under Fed. R. Civ. P. 25(c)." *Levin v. Raynor*, No. 03-cv-4697, 2010 WL 2106037, at *2 (S.D.N.Y. May 25, 2010).

"The decision to order substitution or joinder is to be made by considering how the conduct of the lawsuit will be most facilitated." *Patsy's Italian Rest., Inc. v. Banas*, No. 06-cv-0729, 2008 WL 495568, at *2 (E.D.N.Y. Feb. 20, 2008) (quoting *FDIC v. Tisch*, 89 F.R.D. 446, 448 (E.D.N.Y. 1981)). The "primary consideration in deciding a motion pursuant to Rule 25(c) is whether substitution will expedite and simplify the action." *In re Rates-Viper Patent Litig.*, No. 09-cv-4068, 2011 WL 856261, at *1 (S.D.N.Y. Mar. 10, 2011) (quoting *Banyai v. Mazur*, No. 00-cv-9806, 2009 WL 3754198, at *3 (S.D.N.Y. Nov. 5, 2009)). Thus, substitution is inappropriate where it "would serve only to add duration, costs, and complexity to an action . . . [and] would prolong rather than bring the litigation nearer to its conclusion." *Advanced Mktg. Group, Inc. v. Bus. Payment Sys., LLC*, 269 F.R.D. 355, 359 (S.D.N.Y. 2010).

### B.    Rule 41

Rule 41(b) provides:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision . . . operates as an adjudication on the merits.

Fed. R. Civ. P. 41. The Second Circuit considers five factors when reviewing a district court's decision to dismiss for failure to prosecute. The factors are: "[1] the duration of the plaintiff's failures; [2] whether plaintiff had received notice that further delays would result in dismissal; [3] whether the defendant is likely to be prejudiced by further delay; [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a

11

party's right to due process and a fair chance to be heard; and [5] whether the judge has adequately assessed the efficacy of lesser sanctions." *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 193–94 (2d Cir. 1999). "Generally, no one factor is dispositive." *Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir. 2001). The Court determines whether to dismiss an action under Rule 41(b) "in light of the record as a whole." *U.S. ex rel. Drake v. Norden Systems, Inc.*, 375 F.3d 248, 254 (2d Cir. 2004). To justify dismissal for failure to prosecute, "the court must . . . make a finding of willfulness, bad faith, or reasonably serious fault by evaluating those criteria." *Baptiste v. Sommers*, 768 F.3d 212, 217 (2d Cir. 2014) (internal quotation omitted).

"A federal district court has the inherent power to dismiss a case *sua sponte* for failure to prosecute, even though the language of Federal Rule of Civil Procedure 41(b) seem[s] to require a motion of the party, because *sua sponte* dismissal 'has generally been considered an inherent power.'" *Armstrong v. Guccione*, 470 F.3d 89, 102 n.1 (2d Cir. 2006); *see also Link v. Wabash R.R.,* 370 U.S. 626, 630–31 (1962) ("The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an inherent power, governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases") (internal quotation marks and citation omitted); *Wynder v. McMahon,* 360 F.3d 73, 79 (2d Cir. 2004) (explaining that Rule 41(b) serves "as a rarely employed, but useful, tool of judicial administration available to district courts in managing their specific cases and general caseload"). "Dismissal pursuant to Fed. R. Civ. P. 41(b) . . . is a matter committed to the discretion of the district court." *Alvarez v. Simmons Mkt. Rsch. Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir. 1988).

"At the same time a Rule 41(b) dismissal remains 'a harsh remedy to be utilized only in extreme situations.'" *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (quoting *Theilmann v. Rutland Hospital, Inc.,* 455 F.2d 853, 855 (2d Cir.1972) (per curiam)). "And *pro se* plaintiffs should be granted special leniency regarding procedural matters." *Id.* When considering

12

whether to dismiss claims raised by a *pro se* litigant, the "factors significantly cabin a district court's discretion under Rule 41(b), so that 'deference is due to the district court's decision to dismiss a *pro se* litigant's complaint only when the circumstances are sufficiently extreme.'" *Id.* (quoting *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir. 1996)). "[S]uch dismissals [must] . . . 'be proceeded by particular procedural prerequisites,' including 'notice of the sanctionable conduct, the standard by which it will be assessed, and an opportunity to be heard.'" *Baptiste v. Sommers*, 768 F.3d 212, 216–17 (2d Cir. 2014) (quoting *Mitchell v. Lyons Prof'l Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013) (collecting cases)).

## III.   DISCUSSION

### A.   Motion to Substitute

Mr. Vorotyntsev's motion for substitution is denied.  As an initial matter, Plaintiffs dispute that Mr. Vorotyntsev has adequately established that the Corporate Entities' interests have been validly transferred.  *See* Opp. at 3.  Mr. Vorotyntsev's assertion that he is now the sole shareholder of Shoplink is based solely on his diktat; no legal documentation has been presented to the Court that shows that the other shareholders in Shoplink's shares have been voided.[2]  Therefore, the Court does not conclude that Mr. Vorotyntsev's submissions establish that he and his wife are the sole owners of Shoplink's counterclaims.  However, even assuming that those interests were properly transferred, the Court, in its discretion, finds that substitution is not warranted here.

Allowing Mr. Vorotyntsev to substitute himself for the Corporate Entities would not facilitate the orderly resolution of this action.  Mr. Vorotyntsev's conduct as a *pro se* litigant in the Tatintsian Action weighs heavily against substitution.  As Mr. Vorotyntsev references, he was also a defendant in the Tatintsian Action.  In that case, the Court denied Mr. Tatintsian summary judgment

---

[2] Though the parties only dispute Mr. Tatintsian's potential interest in Shoplink, Mr. Tatintsian is not the only other shareholder of Shoplink known to the Court.  So too is Dr. Lanyon:  Mr. Vorotyntsev has not asserted that his interests in Shoplink were voided as well.

on his remaining claim against Mr. Vorotyntsev.  *See* Dkt. No. 403, 1:16-cv-7203.  The Court twice scheduled a trial to resolve that claim.

In advance of the trial scheduled in the Tatintsian Action, Mr. Vorotyntsev filed multiple motions, seeking relief against Mr. Tatintsian, his counsel, Mr. Khmaladze, Mr. Khmaladze's counsel and multiple other parties that are not and have never been parties to either action.  *See, e.g.,* 1:16-cv-7203, Dkt. No. 538.  The Court, in dismissing Mr. Vorotyntsev and Shoplink's outstanding claims in the Tatintsian Action, made the following observation about Mr. Vorotyntsev's submissions:

> [Mr. Vorotyntsev]'s prolix submissions were premised on a bevy of claims that are not and have never been in this case.  They broadly concern what Mr. Vorotyntsev believes to be a criminal conspiracy involving individuals and entities from three continents.  They purport to connect damage to property in Russia, to cryptocurrency held by an entity in the United Kingdom, to a Belize-based corporation, to counsel based in New York City.  But for that conspiracy, Mr. Vorotyntsev believes, Shoplink would be a multi-billion-dollar company and would have been well-positioned to secure a book deal with Hillary Clinton and purchase Warner Brothers-Discovery.

*Tatintsian v. Vorotyntsev*, No. 1:16-CV-7203-GHW, 2026 WL 852578, at *6 (S.D.N.Y. Mar. 27, 2026).

Allowing the Corporate Entities to continue pursuing their claims through Mr. Vorotyntsev will result in more of the same.  Mr. Vorotyntsev is not using the litigation process as a way to pursue the well-pleaded claims in this action and the Tatintsian action alone.  Instead, he has sought to use these aged matters filed in 2016 as a vehicle to pursue claims related to the alleged conduct of what he views as a global conspiracy dedicated to his destruction, and to which he attributes the responsibility for the failings in his life that have since left him destitute.  Mr. Vorotyntsev's filings support the conclusion that Mr. Vorotyntsev's goals for this litigation are not merely to resolve the well-pleaded claims presented here, but to pursue other grievances that arose in the years after those claims were filed.   Mr. Vorotyntsev has demonstrated that he wishes to expand the scope of this action to raise claims arising out of events that took place long after the events giving rise to this

14

case. He did so in the Tatintsian Action even though the Court scheduled a trial in that case to resolve the only outstanding claim.

Just as in the Tatintsian Action, this case has a trial set to begin shortly. Having observed Mr. Vorotyntsev's conduct during the periods in which he and his corporations have been without counsel, the Court cannot conclude that allowing him to pursue the claims he has purportedly been assigned would result in a focused litigation on the triable claims. Instead, the Court believes that Mr. Vorotyntsev will abuse the trial process to achieve extraneous goals. Those goals include punishing his adversaries in this case. He has named them and their counsel as defendants in a separate action. *See* Dkt. No. 13, 1:26-cv-2148. The Court anticipates that Mr. Vorotyntsev will misuse this litigation to impose undue cost and burden on them in part in order to gain leverage against them in the other action.

The Court will also not grant the motion to substitute because it finds that Mr. Vorotyntsev's motion is a "clear attempt to circumvent the Court's prior rulings that [the Corporate Entities] must be represented by counsel." *Kumaran v. Nat'l Futures Ass'n*, 604 F. Supp. 3d 82, 89 (S.D.N.Y. 2022), *objections overruled sub nom. Kumaran v. Nat'l Futures Ass'n*, LLC, No. 1:20-CV-3668-GHW, 2022 WL 3996962 (S.D.N.Y. Aug. 31, 2022). The Second Circuit has "insisted that that person be an attorney licensed to practice law before our courts." *Jones*, 722 F.2d at 22. The Second Circuit identified the reasons for this "venerable and widespread rule" as follows:

> [T]he conduct of litigation by a nonlawyer creates unusual burdens not only for the party he represents but as well for his adversaries and the court. The lay litigant frequently brings pleadings that are awkwardly drafted, motions that are inarticulately presented, proceedings that are needlessly multiplicative. In addition to lacking the professional skills of a lawyer, the lay litigant lacks many of the attorney's ethical responsibilities, *e.g.,* to avoid litigating unfounded or vexatious claims.

*Id.* Bearing these principles in mind, "federal courts have, in cases governed by federal law, disapproved any circumvention of the rule by the procedural device of an assignment of the corporation's claims to the lay individual." *Id.* at 23.

15

The Court will not allow Mr. Vorotyntsev to "to flout a well-established and purposeful public policy by means of a procedural device." *Id.* (citation omitted).  The Court has counseled Mr. Vorotyntsev multiple times he cannot represent the Corporate Entities as a nonlawyer.  His eleventh hour request to substitute himself for the Corporate Entities is nothing more than his latest attempt to "circumvent the general rule." *Jones*, 772 F.2d at 23.

**B.      Dismissal of Counterclaims**

The Court dismisses the Corporate Entities' remaining counterclaims.  All five factors the Second Circuit considers in evaluating a motion to dismiss for failure to prosecute weigh in favor of dismissal, and the Corporate Entities have willfully failed to prosecute their claims.

First, the Corporate Entities have failed to take any action to prosecute their claims since the Court denied Plaintiffs' motion for summary judgment on those claims in August 2024.  Several attorneys have entered notices of appearance on behalf of the Corporate Entities in this action. Every attorney has moved to withdraw.  Those motions are premised on similar grounds:  a client who refuses to cooperate, insists on action with which his counsel disagrees, and shirks his obligations to pay his bills.  Mr. Vorotyntsev is correct that it is the client, not the attorneys, that must be held responsible to justify dismissal for a failure to prosecute.  Here, the clients are to blame for their repeated failures to work constructively with counsel or to pay them.

Second, the Corporate Entities have been put on notice that the Court would dismiss their claims for failure to prosecute should they fail to comply with their obligations.  As detailed above, each time the Court granted counsel for the Corporate Entities leave to withdraw, the Court warned the Corporate Entities and Mr. Vorotyntsev that the Entities' claims may be dismissed for failure to prosecute.  And in the most recent order, the Court stated that they would be dismissed.

Third, Plaintiffs would certainly be prejudiced by further delay.  "Prejudice to defendants resulting from unreasonable delay may be presumed." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37,

43 (2d Cir. 1982). The Corporate Entities have failed to demonstrate that they have any intent to prosecute their counterclaims through counsel, as required. Mr. Vorotyntsev has also not communicated any good reason for their delay.[3] The Court therefore finds that its delay is unreasonable and willful, and that further delay would prejudice Plaintiffs.

Fourth, the balance between alleviating congestion on the Court's calendar and the parties' right to due process weighs in favor of dismissal. The Second Circuit "insist[s] that dismissal 'be proceeded by particular procedural prerequisites,' including 'notice of the sanctionable conduct, the standard by which it will be assessed, and an opportunity to be heard.'" *Baptiste*, 768 F.3d at 217. The Corporate Entities have had notice and an opportunity to be heard. As detailed above, the Court issued an order to show cause to the Corporate Entities, asking why their claims should not be dismissed for failure to prosecute. The Court has considered Mr. Vorotyntsev's response on their behalf. This is the second such time the Corporate Entities have had the opportunity to show cause why their claims should not be dismissed. Given that the Corporate Entities have had ample notice and opportunity to be heard, their due process rights would not be violated if the Court were to dismiss their counterclaims.

Failure to dismiss the Corporate Entities' counterclaims would likely result in unnecessary congestion of this Court's docket. As the Second Circuit has cautioned, "there must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." *LeSane,* 239 F.3d at 210 (internal brackets and quotations omitted). The Corporate Entities' failure to prosecute may fairly be characterized as "silent and unobtrusive rather than vexatious and burdensome." *Id.* Given the history of this action, the Court

---

[3] The reasons he asserts to justify the Corporate Entities delay have no merit. He argues that the Corporate Entities' failure to prosecute is caused by their failure to inform him of the substitution device. Mot. at 6. This does not excuse the Corporate Entities' failure to prosecute their claims. As described earlier in this order, the Court declines to grant Mr. Vorotyntsev's motion to substitute.

expects that because they will continue to be without counsel. Therefore, the Court expects that there will be no submissions properly made on their behalf. However, as noted above, dismissal would not subrogate the Corporate Entities' right to be heard: they have had that right, and they have willfully failed to exercise it. In the ordinary case, therefore, this factor would not weigh in favor of or against dismissal. *See id.*

However, as detailed above in connection with the motion to substitute, the Court is concerned that Mr. Vorotyntsev will make improper submissions on behalf of the Corporate Entities. He has done so frequently in the past. *See, e.g.*, Dkt. No. 393. And he has filed correspondence on behalf of the Corporate Entities over the purported signature of their counsel, *see* Dkt. No. 637, 1:16-cv-7203, which counsel has disclaimed, Dkt. No. 404. Any such improper submissions by Mr. Vorotyntsev would burden the Court's docket. Given that dismissal will not violate the Corporate Entities' due process rights, the likelihood of such congestion tips the balance of this factor in favor of dismissal.

Fifth, no lesser sanctions are warranted here. As discussed, the Corporate Entities have been repeatedly warned of the consequences of failing to retain counsel. Each time the Corporate Entities' counsel has withdrawn, the Court has provided the Corporate Entities an extended time period to retain counsel. Mr. Vorotyntsev's latest submission indicate that he does not have the resources to secure new counsel for the Corporate Entities. *See, e.g.*, Mot at 3 (describing Mr. Vorotyntsev's financial difficulties). As detailed above, counsel have premised their motions to withdraw in part on their clients' inability to pay for representation. The Court therefore finds that further extensions and adjournments will not solve the fundamental issue: the Corporate Entities cannot prosecute their claims because they are unable to pay for counsel and because any potential future counsel is likely to be put off by their persistent troubles in maintaining a healthy attorney-client relationship. The only sanction that is available for the delay in prosecuting these claims and

18

the failure to secure counsel to do so is dismissal without prejudice. *See LeSane*, 239 F.3d at 211. The Court finds that dismissal without prejudice is an appropriate sanction for the parties' willful failure to prosecute, which will "strike the appropriate balance between the right to due process and the need to clear the docket and avoid prejudice to defendant by retaining open lawsuits with no activity." *Amoroso v. Cty. of Suffolk*, No. 08-CV-826 (JFB), 2010 WL 2985864, at *3 (E.D.N.Y. July 21, 2010).

All of Mr. Vorotyntsev's arguments to the contrary attempt to divert blame for the Corporate Entities' failure to prosecute. He principally argues that the global conspiracy described above has caused his asserted financial indigence, resulting in his failures to pay counsel. *See, e.g.*, Reply at 7–8. As a threshold matter, Mr. Vorotyntsev does not contest that the Corporate Entities freely took on the obligation to engage counsel and promised payment in exchange for their services. But even assuming that Mr. Vorotyntsev is not responsible for the Corporate Entities' inability to pay counsel, the motions to withdraw demonstrate that nonpayment is only one reason counsel have moved to withdraw. Counsel have affirmed that Mr. Vorotyntsev has been difficult to reach, uncooperative, and obdurate in the face of his counsel's advice. On multiple occasions, he has accused his prior counsel as acting on behalf of his adversaries. On one, he has accused counsel of criminal conduct. He has asserted claims against that attorney arising under the Racketeering Influenced and Corrupt Organizations Act. On this record, the Court believes that it is unlikely that the Corporate Entities will be able to retain counsel in a reasonable period of time.

All five factors the Court must consider weigh in favor of dismissal. Accordingly, the Corporate Entities' remaining counterclaims must be dismissed.

## IV.    CONCLUSION

For the reasons stated above, Mr. Vorotyntsev's motion to substitute is DENIED and the Corporate Entities' remaining counterclaims are DISMISSED without prejudice.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to mail a copy of this order to Defendants, to terminate all pending motions, to adjourn all remaining dates, and to close this case. The Clerk of Court is also directed to enter judgment as follows:

- For Plaintiffs on Counts Two, Five, and Six of their complaint.

- For Plaintiffs on Mr. Vorotyntsev's sole counterclaim.

- For Plaintiffs on all of Shoplink Inc., AUM Code LLC, and ITAdapter LLC's counterclaims.

SO ORDERED.

Dated:  April 24, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge

20